## Richmond.

PETERSBURG SAVINGS AND INSURANCE COMPANY v. LUMSDEN.

February 17.

1. By the statute, Code of 1860, ch. 57, §§ 21, 22, 24, a lien is created upon the stock of each stockholder in a joint stock company for the balance due upon his shares of stock; and if assigned, which may be done with the consent of the company, the lien is not discharged, but the stock in the hands of the assignee for the balance, which was owing by the assignor upon the shares when the assignment was made, or which may thereafter become due, may be sold by the company for such arrearages, just as it might have been sold if it had not been assigned.

2. The charter of a joint stock company provides for the payment of $5 per share when the subscription is made, and the residue thereafter as may be required by the president and directors. And the corporation is made subject to the provisions of the Code so far as they are applicable, and not inconsistent with the charter. And by a by-law of the company each stockholder is required to give his note, satisfactorily endorsed, for his unpaid stock. A stockholder, giving his note, with an endorser, for his unpaid stock, the unpaid stock is still a lien on the stock, and the endorser is entitled to have the stock applied to his relief.

3. The statute gives no lien to the company on the stock of a stockholder for any other debts due from him, than that which is due for unpaid stock; and though a by-law of the company provides that the interest of any stockholder shall be liable for the payment of all debts which may be due from him to the company; and if there is more than one debt, the board of directors may prescribe which one or more of said debts shall be paid out of the stock of the debtor; this by-law can only apply to the interest of the debtor stockholder in the stock after the lien of the stock debt is satisfied. And the endorser on the stock note is entitled to have the stock applied to pay that debt in preference to the other debts due from his principal to the company.

This was an action of debt in the hustings court of the city of Petersburg brought in March, 1876, by the Peters-

burg Savings and Insurance Company against William C. Lumsden, upon a negotiable note for $3,388, bearing date May, 1873, and payable December 1st following, made by T. T. Broocks, and endorsed by said Lumsden to the plaintiff.

The defendant pleaded "payment," and filed two special pleas; and the parties agreed to the facts, and waiving a jury, submitted the case to the decision of the court.

The material facts are as follows:

That T. T. Broocks having purchased in different parcels and at different times, capital stock of the Petersburg Savings and Insurance Company to the amount of 308 shares, for the unpaid amount due for same, they having been only partly paid up, executed as maker, and William C. Lumsden as endorser to the plaintiff, the note sued on or a note of which the note sued on is a renewal; that the said note sued on, and in the declaration mentioned, made by T. T. Broocks and endorsed by the said William C. Lumsden to the Petersburg Savings and Insurance Company for the consideration as aforesaid, of so much as was unpaid on the said 308 shares of the stock of the said company, taken by the said Broocks, was not paid when it became due, and was protested therefor, and William C. Lumsden had due notice thereof.

That the said Lumden endorsed the said note for the accommodation of the said Broocks and for no other consideration whatever.

That the said Broocks paid the rest and residue of the purchase price of said stock in currency, and this note, or one of which it was a renewal, was given and delivered to the plaintiffs as, and for the amount of his, the said Broocks' stock unpaid; that is for the sum or amount of eleven dollars per share on said 308 shares of said capital stock; that the said note was given by the said Broocks and Lumsden to the plaintiff, the said Petersburg Savings and Insurance

Company, and received by the same with the agreement and understanding to be implied from the by-laws of the said company, that in case of a failure to pay the whole or any part of the said note, or to renew the same in whole or part, as, and when required by the board of directors of the plaintiff, the said 308 shares of stock would become liable to be sold therefor; that by the by-laws or rules and regulations of the plaintiff, the said Broocks had the privilege of paying two dollars per share on the said 308 shares in addition to the amount already paid by him, and giving to the plaintiff a note, without any endorser whatever, for the sum of $2,772, representing $9 instead of $11 per share, in lieu and in the place and stead of the note in the plaintiff's declaration mentioned, as shown by a copy of the orders of the board of directors of the said company, the plaintiff, made in June, 1867.

The said company's charter and by-laws are made part of this case agreed.

It is in the latter provided that the interest of any stock-holder of this company shall be liable for the payment of any and all debts which may be due from him at any time to the company, either as principal or endorser, and in case there shall be more than one debt, the board of directors shall have the power to prescribe which one or more of such debts shall be paid out of the stock of the indebted member.

The said Broocks held certificates or the scrip for the said 308 shares of stock, at the date of the making, and his assignee in bankruptcy held the same at the maturity of the note aforesaid sued on. The papers hereto annexed, marked "1 and 2, T. T. B.," correctly exhibit the relations of said Broocks to the plaintiff as debtor thereto and stockholder thereof. These papers show Broocks largely indebted to the plaintiffs on other notes discounted for him by the company. The said Lumsden is not an endorser on the

notes made by said Broocks, and now held by the plaintiff, except the note sued on, and the said Broocks and the endorsers on the other notes than the note sued on, are insolvent and bankrupt, and the plaintiff has no security therefor, except so far as the said stock may be security. That the plaintiff will lose largely therefrom ; that if the 308 shares of stock be applied to said notes, to the exclusion of the note sued on, said stock will fall far short of paying the same.

That the value of the said 308 shares of stock, being of the value of $17 per share, greatly exceeds the amount of the note sued on, drawn, as aforesaid, by T. T. Broocks, and endorsed by William C. Lumsden. It was of the value of $29 per share on November 7, 1872. That the said Lumsdem and Broocks contracted with the plaintiff with a knowledge of, and with reference to, the charter and by-laws of the same. And it is agreed that if the defendant William C. Lumsden has the right, and a remedy to enforce it at law or in equity, to have the said 308 shares of stock applied to the payment of the note sued on, and mentioned in the declaration, and made part hereof, in preference to the said other debts due by T. T. Broocks to the plaintiff ; i. e., to postpone the latter to the said note endorsed by William C. Lumsden, in the application of the said stock, so that nothing therefrom shall be paid to the same until said note endorsed by William C. Lumsden has been fully paid, that in such case judgment shall be pronounced for the defendant; otherwise, that judgment shall be pro-nounced for the plaintiff against the said defendant for the full amount of principal, interest, and charges of pro-test due by him to the plaintiff, as endorser of said note in the declaration mentioned, and be conclusive of the right of the plaintiff to apply said 308 shares of the stock to such debts of said T. T. Broocks as it may determine.

The paper of T. T. Broocks shows that up to June 1st,

1872, Broocks had purchased fifty-six shares of the stock of the company, for which he gave his note for $672, with William C. Lumsden as endorser; and in November, 1872, he purchased of C. A. Jackson & Co. two hundred and ninety-two shares of said stock, of which he transferred to his daughter forty shares; and December 1st, 1872, Broocks made a note for all the stock standing in his name (that is to say, 308 shares), for which he made his note for $3,388, with William C. Lumsden as endorser.

The case was heard upon the facts agreed on the 29th of January, 1877, when the court rendered a judgment in favor of the defendant Lumsden. And thereupon the plaintiff applied to a judge of this court for a writ of error; which was awarded.

*J. Alfred Jones,* for the appellant.

*Friend & Davis* and *William J. Robertson,* for the appellee.

ANDERSON, J. It is provided by statute (Code of 1860, ch. 57, §§ 21 and 22, p. 334), that if the money, which any stockholder has to pay on his shares, be not paid as required by the president and directors, such shares, after the prescribed notice has been given, may be sold at public auction for ready money, and transferred to the purchaser. And out of the proceeds shall be paid the charges, and the money which ought to have been paid upon the said shares, with interest thereon, and the surplus, if any, paid to the delinquent or his representative.

By § 24, it is provided that no stock shall be assigned on the books, without the consent of the company, until all the money which has become payable thereon shall have been paid. And on any assignment, the assignee and the assignor shall each be liable for any installments which may have accrued, or which may thereafter accrue, and may be provided against in the manner before provided.

By the foregoing sections of the statute, a lien is created upon the stock of each stockholder for the balance due, or to become due, on his shares of stock; and if assigned, which may be done with the consent of the company, the lien is not discharged, but the stock in the hands of the assignee for the balance, which was owing by the assignor upon the shares when the assignment was made, or which may thereafter become due, may be sold by the company for such arrearages, just as it might if it had not been assigned.

By the act of incorporation, the capital stock of the company is divided into shares of $25 each—reduced by amendment to the charter to $20 each—and $5 on each share is required to be paid at the time of subscribing, and the residue thereafter, as may be required by the president and directors. And by the last clause of the act, the corporation is made subject to the provisions of the Code, so far as they are applicable, and not inconsistent with the act, which it would have been if it had not been so expressed. And it is subject, therefore, to the provisions of the Code, which are applicable thereto, which subjects the stock of each stockholder to a lien for the unpaid balance due on his shares of stock, unless it is otherwise provided by the act of incorporation.

By section 9 of the by-laws, "each stockholder is required to give his note, satisfactorily endorsed, for his unpaid stock." But this requisition does not supersede, or impair the lien given by the statute; for it is added: "And the failure to renew such security, or to pay any portion of the amount due, when required by the board, shall make such stock (as is provided by sections 21 and 22 of the Code, bofore cited) liable to be sold therefor." But by a resolution of the board, of June 19th, 1867, "all stockholders may change their present form of note to the new one, by paying two dollars per share." The new note was made by

the stockholder to the company, without an endorser, for what he was required to pay on his stock. And it appears from the statement of agreed facts, that Broocks, the maker of the note in controversy, was the owner of 308 shares of stock in the plaintiff company, upon which there was only eleven dollars per share unpaid, for which the note in question was given, or the one for which it is a renewal, and which was endorsed by Lumsden, the defendant in error here; and that it was the privilege of Broocks, by paying $2 per share, on the 308 shares, in addition to the amount he had already paid, of giving to the plaintiff his note without an endorser, for the unpaid balance of his stock, which would, of course, have been a discharge of the note of which Lumsden was an endorser.

The statute gives no lien to the company on the stock of a stockholder for any other debts due from him than that which is due for unpaid stock. For his general indebtedness to the company, it is provided by § 30 that his dividend, or so much as may be necessary, shall be passed to his credit in payment of the debt; but no right or power is given to the company to charge his stock with its payment. And § 9 of the by-laws, above recited, only makes the stock liable to be sold for what the stockholder is owing on stock account, and not for other debts. It also requires the stockholder to give his note with an endorser for the amount of his unpaid stock, which is not required by the Code, but as an agreed fact by a subsequent regulation, if his unpaid stock does not exceed $9 per share, he is not required to give an endorser; and when he has given his note with an endorser, by reducing the amount of his unpaid stock to $9 per share he may take up that note and give a new note in its place without an endorser.

There is no provision in the charter authorizing the company to sell the stock of a stockholder to satisfy his debts to the company. That authority is given by the Code, but

only for debts due on stock account, and for no other debts. The charter does provide that "no stockholder indebted to the company shall assign or make a transfer of his stock, or receive a dividend, until such a debt is paid, or secured to the satisfaction of the board of directors." But that does not authorize the company to sell his stock, or give a lien upon it to satisfy the company's debt. Nor is it inconsistent with the general law which gives to the company a primary lien upon his stock for the unpaid balance which may be due upon it. It may have been, and probably was, intended as a protection to the company for other debts due from the stockholder, that he shall not assign his stock until such debts are paid or secured. But it does not take from the company the right given by the general law to sell his stock for the balance due upon it, which creates a lien the instant the stock is subscribed and confirmed by the payment of $5 per share, as required by the charter, and to which lien the endorser is entitled on the equitable principle of subrogation.

It appears that T. T. Broocks bought stock, prior to November 7, 1872, at different times, aggregating fifty-six shares, and that he gave his note with William C. Lumsden, the defendant in error, as endorser for $672, the amount due on the said fifty-six shares of stock; and that on that day he purchased of C. A. Jackson & Co. 292 shares of stock in said company, forty shares of which, on November 20th next following, he transferred to his daughter, retaining for himself 252 shares of the 292 he had purchased from Jackson & Co., which, added to the fifty-six shares he owned before, made 308 shares upon which there was $11 per share due and unpaid, amounting to $3,388 upon the whole. For this sum he gave his note with Lumsden as endorser, on the 1st of December, 1872, and which undoubtedly embraced what was due and unpaid upon the 252 shares of stock when he purchased from C. A. Jackson & Co., which

was taken by the company as security for what was unpaid upon the 252 shares of Jackson & Co.'s stock, and on the fifty-six shares which Broocks owned before, in the place of Jackson & Co.'s note *pro tanto*, and Broocks' note for $672 endorsed by Lumsden. And thus the assignment was made by C. A. Jackson & Co. to Broocks in conformity with the provision of the charter before cited.

But whilst neither the Code nor the act of incorporation contains any propovision of security to the company for debts due to it from stockholders, except stock debts, such provision is made by the company in the 15th section of its by-laws, which provides that " the interest of any stockholder of this company shall be liable for the payment of any and all debts which may be due from him at any time to the company, either as principal or endorser, and in case there shall be more than one debt, the board of directors shall have the power to prescribe which one or more of such debts shall be paid out of the stock of the indebted member."

The defendant's position with regard to this section, as I understood them, were: First, that the section was designed to give security to the company for any and all debts which may be due from the stockholder, either as principal or endorser, contracted by him in his dealings with the company in its usual and ordinary course of business, which had not been provided for; and not for his subscriptions to the capital stock of the company, which had already been provided for. Secondly, that it only makes the *interest* of the stockholder liable for the payment thereof, which is what is due him upon the sale of his stock, after satisfying the balance which he owes for the stock.

That it was not intended to provide for the security of stock subscriptions or stock debts, as contradistinguished from debts contracted with stockholders, as with strangers in the usual course of business, may be inferred from the

fact that ample provision had already been made by the Code, and by section 9 of the by-laws, for securing stock debts, and no such provision as is made by section 15 for securing them was needed—whilst for debts due from a stockholder, either as principal or as endorser, no provision had been made, either by the Code or the act of incorporation. It was, therefore, necessary, if the stock was to be a security for such debts, that some such provision should be made in the by-laws as is made by this section. Provision having been made by section 9 of the by-laws for the security of unpaid stock, and no other debts owing by stockholders, a provision was deemed necessary to secure this latter class of debts. It would have been an act of supererogation to have made such a provision as is contained in this section for the security of stock debts. The shares of stock owned by the stockholder were made liable to be sold the company, both by the Code and by section 9 of the by-laws, to pay any arrearages due upon his stock, and thus a lien given to the company upon the stock, and power to the company to enforce it by sale, without the intervention of a court; why then should section 15 have been afterwards construed to make the stock liable to pay what was in arrear and unpaid, which had been more effectually provided by a previous section?

Secondly. This section makes only the *interest* of the stockholder liable, not for stock debts for which the stock was already liable, but for any and all debts due from the stockholder, as no provision had been made for their security.

What is the *interest* which a stockholder has in the company of which he is a member but the stock which he owns in the company? And what is the extent of that interest? Not the market value of the shares of stock which he holds, and not paid for, but the value of his stock, after deducting therefrom what has not been paid

upon it, his stock being liable to be sold by the company at any time and the proceeds applied to the payment of so much thereof as is unpaid. His interest in the company is only the market value of his stock, after deducting therefrom what is unpaid. And this is the *interest* which is made liable for the debts, which were intended to be secured by this 15th section of the by-laws. Ample provision having been made to secure the payment of what is due upon the stock, but no other debts of the stockholder, the company, by this section say, we will now provide for the security of *any and all debts* due by the stockholder to the company, by making his *interest* in the company liable for their payment—that is, his stock in the company after what is due upon it is satisfied.

The company had undoubtedly a lien upon the stock of C. A. Jackson & Co. for the balance due on their stock as soon as their subscription was confirmed by the payment of $5 per share. The exact date of their acquiring the stock does not appear from the record, as I can find. But it is evident that it was long before Broocks became indebted to the company on other accounts. He purchased of Jackson & Co. on the 7th of November, 1872, who assigned their stock to him, subject of course to the company's lien upon it for the balance due upon it and unpaid.

The inference is from what appears in the record, that the note of T. T. Broocks, with Lumsden's endorsement, upon which this suit is brought against the endorser, was given to the company in the place of C. A. Jackson & Co.'s note, and the note for $672 on the 56 shares of stock, of which he was the owner before, and the old note was surrendered to Broocks, and Jackson & Co.'s note was surrendered to them. And by § 24 of ch. 57 of the Code, *supra*, the lien of the company was not lost, waived or abandoned by the assignment, but the assignee and the assignor are both liable for any installments which have accrued, or which

may thereafter accrue, and may be proceeded against, as provided by sections 21 and 22, before cited—that is, the company may, upon notice, sell his stock, in the hands of the assignee, and pay itself what is due upon it.

In this view it matters not whether the construction of the plaintiff or the defendant obtains; for the stock was subject to the lien of the stock debt before the other debts were contracted, and consequently before any lien could have attached for after-contracted debts, which therefore must be postponed; unless the latter clause of said section, which is in these words, " In case there shall be more than one debt, the board of directors shall have power to prescribe which one or more of such debts shall be paid out of the stock of the indebted member," authorizes the company to vacate or shift the lien, and give precedence to after-contracted debts, to the prejudice of the endorser of the stock note.

If the view I have taken be correct, the only fund which the company might apply to such of the debts as it selected is the *interest* of the stockholder in the stock—that is, its value, or proceeds of sale, after deducting what he was owing on it. The debts which the company is authorized to select, to be paid out of the sale of the debtor's stock, I think, does not include what he owes upon his stock. Such a provision would be palpably in conflict with the general law, and not being authorized by the special act of incorporation, a court of justice will presume that the company did not intend it, if it be at all susceptible of a construction which would justify that presumption.

Difficulties in reaching these conclusions have been suggested and urged with ability and ingenuity by plaintiff's learned counsel. Such as have not already been considered in the course of this opinion we will now proceed briefly to notice. Real difficulties there are, which have already been considered, and my mind is not entirely free from

doubt; but reason and authority, I think, strongly support the conclusions I have reached, and whatever of doubt remains should be resolved in favor of the strong equity of the endorser and his right to substitution.

It is contended that the claim of defendant that the stock is primarily bound for what is due upon it and unpaid, makes nugatory the endorser's understanding from the beginning; that the stock in this case was worth more than double the balance due upon it, and if it was pledged to the security of the note given for the balance due upon it, the endorsation was but an idle form.

The market value of stock is very fluctuating, and although at the date of these transactions, Broocks' stock may have been worth double the balance which he owed upon it, before that balance was paid its market value might be so reduced that half that amount might not be realized from it.  Hence it was reasonable and proper that the company should, if through abundant caution, require a note with a satisfactory endorser for the unpaid stock, as ultimate security.  But the requirement was general, applicable to every stockholder, and although an endorser was unnecessary in this instance, it would not show that it was not proper and judicious as a general rule.  But the regulation to dispense with an endorser, when the balance due on the stock does not exceed $9 per share, is very conclusive to show that the company held the stock as primary security, and only required an endorser as ultimate security.

As to the provision in the charter in respect to assignment of stock, the case of *Rogers* v. *Huntingdon Bank*, 12 Serg. and R. (Pa.) R. 77, only shows, so far as it has a bearing upon this case, that the stockholder, his stock being fully paid up, cannot assign it until his other indebtedness to the bank is paid—which is conceded in this case, and claimed to be the effect of section 15 of the by-laws.

Broocks held certificates for 308 shares, which showed

that he was the owner thereof. But the company knew that he owed a balance thereon, and that he was not the absolute owner until such balance was fully paid.

There is nothing in the issuing of certificates of shares which amounts to a waiver or an abandonment of the lien of the banker. Moore on Banks and Banking, p. 507-8 ; *Union Bank* v. *Laird*, 2 Wheat. R. 390; *Klopp* v. *Lebanon Bank*, 46 Penn. R. 88 ; *Kuhns* v. *Westmoreland Bank*, 2 Watts. 136; *Hussey* v. *Manufacturers and Mechanics Bank*, 10 Pick. R. 415.

The lien is primarily for the benefit of the bank. But if the principal debtor furnishes securities, and they pay the amount to the bank, they will then be subrogated to all the rights of the bank. Moore, Ibid, p. 509 ; 46 Penn. 88, *supra*.

The provision of the Code requiring that the stock of the stockholder shall be primarily bound for the balance due on his stock, creates a strong equity in favor of the endorser of a note for the balance due on the stock, and it would require a very clear provision in a special act of incorporation to change the general law, and to make nugatory the lien, by giving the company authority to take from the endorser of the stock note the security he has under the general law, and apply it to other debts, which his principal contracted with the bank after the stock lien was attached. I am of opinion that it has not been done by the special act of assembly, under which the plaintiff holds its chartered privileges. Upon the whole, I am of opinion to affirm the judgment of the circuit court.

CHRISTIAN and STAPLES, J's, concurred in the opinion of *Anderson, J.*

BURKS, J., had some difficulties on the question, but not sufficient to induce him to dissent.

JUDGMENT AFFIRMED.