[No. 2304. Decided November 18, 1896.]

FRED D. BARTO, *Receiver, Respondent,* v. R. NIX *et al., Appellants.*

PLEADING — DUPLICITY — CORPORATIONS — RIGHT TO RECEIVE OWN STOCK IN PAYMENT OF DEBT — RECEIVER — ACTION ON STOCK SUBSCRIPTIONS — ESTOPPEL — RES JUDICATA.

Were a complaint sets forth facts tending to show a liability both in tort and on contract, such recital is not open to objection on the ground of stating more than one cause of action, when such facts

all relate to a single transaction and are relied upon as the basis of a single cause of action.

A judgment against stockholders of a bank for the recovery against them of their contingent liability over and above the par value of their stock connot be pleaded as *res judicata* in an action by the receiver of the bank to recover unpaid subscriptions, to the amount of the par value of the stock.

A corporation has authority to receive from a stockholder his certificates of stock in payment of his indebtedness to it, when such transaction is *bona fide* and for the purpose of protecting the corporation from loss; and stock so taken may be re-issued by the corporation.

In an action by a receiver of a bank to enforce stock subscriptions, the defendants, who were directors in the bank, are estopped from setting up that the bank stock had been issued by the bank to them and their notes taken therefor, under a secret agreement that they should not be liable thereon.

Where, in an action for the appointment of a receiver for a corporation, the court had determined that unpaid assessments upon the capital stock should be collected, it must be presumed, in an action brought by the receiver for their collection, that such determination was necessary and rightful, although from the record in the original action it may appear that the assets of the bank were sufficient to discharge its indebtedness.

Appeal from Superior Court, Pierce County.—Hon. W. H. Pritchard, Judge.  Affirmed.

*John Paul Judson*, for appellants.

*Remington & Reynolds* (*John A. Shank*, of counsel), for respondent :

A corporation may become the owner of its own stock if taken in good faith in payment of a pre-existing debt.  2 Thompson, Corporations, § 2068; *Yeaton v. Eagle Oil, etc., Co.*, 4 Wash. 183; *Commonwealth v. Boston, etc., R. R. Co.*, 142 Mass. 146; *Williams v. Savage Mfg. Co.*, 3 Md. Ch. 418; *City Bank of Columbus v. Bruce*, 17 N. Y. 507; *State Bank v. Fox*, 3 Blatchf. 431; *State v. Smith*, 48 Vt. 266.

The secret trust between appellants and the banks does not relieve them from liability. The statute relating to stock held in trust was not intended to apply to secret or colorable trusts, where there was no *cestui que* trust and no fund answerable to creditors, but such a trust will be set aside or disregarded as a fraud upon creditors. *Hospes v. Northwestern Mfg. & Car Co.*, 48 Minn. 174; *Gogebic Investment Co. v. Iron Chief Mining Co.*, 78 Wis. 427 (23 Am. St. Rep. 417); *Sawyer v. Hoag*, 17 Wall. 610; *Union Mutual Ins. Co. v. Frear Stone Mfg. Co.*, 97 Ill. 537 (37 Am. Rep. 129); *Melvin v. Lamar Ins. Co.*, 80 Ill. 446 (22 Am. Rep. 199); *Scovill v. Thayer*, 105 U. S. 143; *First National Bank v. Gustin, etc., Mining Co.*, 42 Minn. 327 (23 Am. St. Rep. 510); *Boulton Carbon Co. v. Mills*, 78 Iowa, 460; *Elyton Land Co. v. Birmingham, etc., Elevator Co.*, 92 Ala 407 (25 Am. St. Rep. 65); *In re Reciprocity Bank*, 22 N. Y. 9; *Farmer's, etc., Bank v. Jenks*, 7 Metc. (Mass.) 592; *Nathan v. Whitlock*, 9 Paige, 152; *Mann v. Cooke*, 20 Conn. 178; *Sagory v. Dubois*, 3 Sanf. Ch. 466; *Baines v. Babcock*, 95 Cal. 581 (29 Am. St. Rep. 158); *Allibone v. Hager*, 46 Pa. St. 48; *Marshall Foundry Co. v. Killian*, 99 N. C. 501 (6 Am. St. Rep. 539).

The opinion of the court was delivered by.

HOYT, C. J.—In 1890 the Bank of Puyallup was organized under the laws of the state with a capital stock of $100,000, divided into one thousand shares of $100 each. This stock was all subscribed for and sixty per cent. paid thereon before any business was transacted. A. C. Campbell was the owner of two hundred shares of this stock, and on the 13th day of November, 1891, he transferred one hundred and ninety-nine shares directly to the bank and received a credit of $14,000 therefor on the books of the bank, to which

he was then indebted; and the bank thereupon attempted to cancel these certificates of stock. Thereafter it was thought necessary by the officers of the bank that these one hundred and ninety-nine shares of stock should be held by some one, and it was agreed that they should be re-issued to J. P. Stewart and Willis Boatman, who were to give their promissory notes for seventy per cent of the face value of this stock. This was done and the stock so issued held by them until 1892, when it was by them surrendered to the bank and the certificates evidencing their ownership canceled; and it was then agreed that this stock should be re-issued to the directors of the bank, each to receive the number of shares then agreed upon. The certificates, in accordance with this agreement, were issued to the several defendants, who each gave to the bank his note for seventy per cent. of the face value of the stock. This stock so issued to these defendants was held by them until June, 1893, at which time the bank was declared insolvent and its assets placed in the hands of a receiver for the purpose of closing up its business. In the action in which the receiver was appointed it was determined by the court that the assets in the hands of the receiver were insufficient to pay its indebtedness, and such receiver was directed to levy an assessment upon the stockholders for the amounts unpaid upon their several stock subscriptions. In pursuance of this order assessments were duly levied upon the several defendants in this action for the full amount of the par value of the stock standing in their name, which had been issued to them as hereinbefore stated, and due notice thereof given. Thereafter such assessments not having been paid, this action was brought to enforce payment.

The first assignments of error are founded upon the rulings of the court in settling the pleadings, and all relate to the alleged claim that the second amended complaint stated more than one cause of action, and that the several causes of action were not separately stated. This complaint simply set out in an orderly manner a statement of the facts relating to the transaction which was relied upon to show that the plaintiff was entitled to recover a judgment against the defendants; and while some of the facts so alleged may have tended to show that a contract was entered into between the bank and the defendants, and others to show wrongful action on the part of the defendants and the bank, they all related to a single transaction and were properly included in a single count. Whether a claim of relief is rightfully founded upon a contract relation entered into, or wrongful acts done, where but a single transaction is relied upon, the recital of the facts relating to such single transaction is not open to objection, for the reason that such recital may tend to show a liability upon contract and also in tort. The facts as to such single transaction having been set out, it is for the court to say whether or not they constitute a cause of action. Such being the rule, there was no foundation for the claim that there had been any such change of the cause of action in the several complaints as to justify the court in granting defendants' motion to strike.

· The question raised by the demurrer to the second amended complaint is so connected with questions growing out of the trial that a separate discussion is not necessary. Something is said in the brief as to the right to trial by jury, but since no error is assigned upon the action of the court in refusing a jury trial, that question cannot be here considered.

It appeared that, at the time this stock was issued to the defendants, there was an agreement between them and the bank that they should never be called upon to pay the notes which they had given for seventy per cent. of its par value, nor held liable in any manner by reason of the fact that such stock was issued to them and carried in their name; and upon this agreement and the fact that the stock issued to the defendants had been theretofore issued to Campbell and by him transferred to the bank in payment of his indebtedness thereto, are founded the principal claims of defendants for a reversal of the judgment.

One other ground is somewhat relied upon, and that is that a judgment had been rendered in another action against these defendants and other stockholders, for the amount due upon the stock severally held by them.    But a comparison of the record in that case with the one in the case at bar will clearly show that the liability for which that judgment was rendered was a different one from that for which it was sought to recover in this action.    This suit was to recover for an unpaid subscription to the amount of the par value of the stock.    The other was to recover the contingent liability over and above the par value of the stock, provided for in the constitution.    Beside, that judgment was not at the time it was offered in evidence a final one.    An appeal therefrom had been taken to this court, upon which the judgment has been reversed and the proceeding dismissed.

The appellants earnestly contend that, under our statutes, the bank had no authority to take the stock of Campbell in payment of his indebtedness to the bank.    It may be conceded that a corporation in this state cannot traffic in its own stock.    Such we believe to be the rule established in all the states having sim-

ilar statutory provisions. But it does not follow that it may not receive such stock in payment of the indebtedness of one of its stockholders, when such transaction is *bona fide* and for the purpose of protecting the corporation from loss. In our opinion the transaction between the bank and Campbell was authorized and thereby the bank became the owner of the stock in question, and had the right to re-issue it. But whether it did or not, these defendants, who were the managers of the bank, cannot defend upon the ground that what was done was not authorized by law.

The other material question grows out of the secret agreement between the defendants and the bank, to the effect that they should incur no liability by reason of the stock being issued to them. Relating to this question the trial court found as a fact that this was done for the purpose of giving credit to the bank and that, by reason of the credit so given, its creditors, represented by the receiver, were induced to give it their business. This finding of fact is excepted to by the appellants on the ground that it was not sustained by the evidence, but this exception was not well taken. The fact of the stock having been issued and the notes having been taken therefor would require that such notes should be carried as a part of the assets of the bank, and there would be at least an apparent liability upon the part of the holders thereof for the remainder of its par value. This being so, the law would presume, in the absence of any proof as to the object of the transaction, that it was for the purpose of having the books show that the bank was in a better condition than it would have been if such stock had not been re-issued. Beside, there was direct proof that it was understood that it was necessary that

this stock should be issued to somebody in order that the bank might be in such a condition that an examination of its books would not discredit its standing. Such being the object for which this stock was issued to the defendants, it might well be questioned whether they could set up this secret contract between them and the bank in an action brought by the bank itself to recover the par value of the stock. The contract was clearly an illegal one, and there might be reason for holding that the transaction must be treated as though this secret illegal agreement had never been entered into.

But it is not necessary here to decide that question. This action is in the name of the receiver who represents both the bank and its creditors, and as between the creditors and these defendants it is clear that this secret agreement, by which it was sought to change the liability of the holders of this stock, was without any force whatever. To hold that one could have stock issued to him and allow the same to stand in his name upon the books of the bank, and yet by a secret agreement with such bank be released from all liability growing out of the issue of such stock, would be contrary to the provisions of our statutes and to public policy. This would be true even if the person to whom the stock was issued was a stranger to the corporation at the time of its issue; and where, as in the case at bar, the stock was issued to the directors of the bank, who must be presumed to know its condition and the purpose of the issue, the reason for holding them liable is much greater. A director is an officer of the bank, and it is through the board composed of himself and his associates that its business is transacted. To hold that one of these can make a note to the bank and have it taken up as a part of its

assets and afterwards, when such note is sought to be enforced against him in the interest of the creditors of the bank, set up a secret agreement which nullifies the note, would be contrary not only to all legal rules but to every principle of justice. And the rule which would apply to a note so made and executed would apply to the liability created by the holding of stock issued under the circumstances disclosed by this record.

The only other reason suggested why the judgment should be reversed, which we think it necessary to notice, is that it appeared from the record in the action in which the receiver was appointed that the assets of the bank were sufficient to discharge its indebtedness. But that fact, if fact it was, was immaterial under the issues in this action. The court in that cause had determined that it was necessary that the unpaid assessments upon the capital stock should be collected, and it must be presumed that this determination was necessary and rightful.

We find no error in the record, but even if there were technical error, it did not affect the rights of appellants, for the reason that the facts as stated in their own brief show that the judgment was what it should have been.

Judgment affirmed:

DUNBAR, ANDERS, SCOTT and GORDON, JJ., concur.