[No. 2500.  Decided October 7, 1897.]

W. W. DEARBORN *et. al., Plaintiffs*, CLISE INVEST-
MENT CO., *Appellant*, v. WASHINGTON SAVINGS BANK,
*Respondent*.

CORPORATIONS — ASSESSMENTS ON SHARES OF STOCK — LIEN — SALE.

Gen. Stat., § 1507 (Bal. Code, § 4262), providing for the for-
feiture and sale of corporate stock for default in payment of
assessments, does not give a corporation a lien on its capital
stock for debts due from its stockholders.

Under the provisions of the statute (Gen. Stat., § 1507), that
the sale of shares of stock for non-payment of assessments shall
be made as prescribed in the by-laws of the corporation, the
corporation has no power to sell when it has made no provision
therefor in its by-laws; and the only remedy of the corporation,
in such case, would be an action at law to recover the amount
due.

In case of a pledge of shares of corporate stock, the proper
remedy, for a corporation seeking to enforce the pledgor's lia-
bility on his stock subscription, is to obtain judgment against
him upon his refusal to pay and sell his shares of stock upon
execution, subject to the lien of the pledgee.

Appeal from Superior Court, King County.—Hon.
J. W. LANGLEY, Judge.  Affirmed.

*Preston, Carr & Gilman*, for appellant.

*G. H. Fortson*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—The Clise Investment Company is a cor-
poration organized and existing under and by virtue of
the laws of this state, with a capital stock of $200,000
divided into two thousand shares of $100 each.  James M.
Curry subscribed for ten shares and J. W. Clise for two

hundred shares of the capital stock of this corporation, and the stock was issued to both Curry and Clise for the amount of their respective subscriptions, and Curry is still the owner of ten shares and Clise of two hundred shares of such capital stock. Curry and Clise each paid fifty per cent. of the amount of their respective subscriptions, and subsequently the corporation declared a dividend of twenty-five per cent., which was applied in payment of the amounts due from the various stockholders, including Curry and Clise, on their subscriptions to the capital stock, and there is, therefore, twenty-five per cent. of the subscription which has not been paid in. The balance due does not appear upon the face of the certificates, but on the contrary the certificates recite that the stock is nonassessable. On March 23, 1892, Curry obtained a loan of $300 from the Washington Savings Bank and pledged his ten shares of stock of the Clise Investment Company as security therefor. On the 30th day of March, 1893, said J. W. Clise obtained a loan of $5,000 from the Washington Savings Bank and pledged his two hundred shares of stock as security for the same. Neither of said loans has been paid. Subsequently the Washington Savings Bank became insolvent and, at the suit of W. W. Dearborn, one C. M. Sheafe was appointed receiver thereof and qualified as such, and took possession and control of all the assets of the bank, including the notes of Curry and Clise secured by the pledge of stock as aforesaid. After the appointment of Sheafe as receiver, and after he had qualified and taken possession of the assets of the bank, and on January 8, 1896, the board of trustees of the Clise Investment Company made a call on its stockholders of $6 per share, upon all the subscriptions to its capital stock. Due notice of this assessment and call was given to Curry, to Clise and to Sheafe, as receiver of the Washington Sav-

ings Bank, but no payment was made by either, and there is due to the corporation on the Curry stock the sum of $60, and on the stock owned by Clise the sum of $1,200. Curry is a non-resident of the state of Washington and has no property therein other than his equity in the stock aforesaid. Clise is a resident of the state, but has no property other than his said stock. The respective loans from the Washington Savings Bank were made through one Higgins, who was cashier of the bank. Higgins was also a member of the board of trustees and the treasurer of the Clise Investment Company. No order or resolution was ever made or offered by the trustees or officers of the Clise Investment Company, forfeiting, or ordering forfeited, the stock of Curry and Clise, or either of them, or any portion thereof.

Upon this state of facts the Clise Investment Company filed a petition in the action in which the receiver was appointed, requesting that the said C. M. Sheafe, as receiver of the Washington Savings Bank, be directed and ordered to pay to the Clise Investment Company the said assessment of $6 per share upon the said two hundred and ten shares of its capital stock, so pledged as aforesaid, and now held by said Sheafe as such receiver, or that petitioner be permitted to sell, in the manner provided by law, sufficient of said stock to pay said assessment of $6 per share. The court declined to grant the requests of petitioner, and made an order denying the petition, and from that order the Clise Investment Company has appealed.

It does not appear that the Clise Investment Company was or is indebted to the Washington Savings Bank. The bank owes it nothing and its receiver, so far as the record discloses, has none of its property in his possession or under his control, and it is therefore difficult to perceive how, or for what reason, the court could have granted the petition.

It is claimed, however, that the Clise Investment Company had and has a lien upon the shares of Curry and Clise for the amount of the call made by the trustees of the company, and that the court, therefore, had the power, and it was its duty, to order a sale of the stock, or the payment of the amount due thereon by the receiver. If there was such a lien upon the stock in question, it must have been created by some express legislative enactment, for it is well settled, at common law, that corporations have no lien upon their capital stock for the debts of their stockholders. 1 Morawetz, Private Corporations (2d ed.), §122; Boone, Corporations, §124.

And there is no statute in this state providing for such liens. It is true that provision is made by our statute for forfeiture and sale of stock for default in payment of assessments under certain circumstances, but, in our judgment, it does not follow from the fact that stock may be sold for such purposes that the corporation has a lien thereon for unpaid assessments. By statute in some of the states it is provided that no stockholder shall transfer his stock until his indebtedness to the corporation is paid; and under such statutes the courts have held that the corporation necessarily has a lien upon the stock. Such was, in substance, the law under which the cases of *Petersburg, etc., Co. v. Lumsden*, 75 Pa. 327, and *Mount Holly Paper Company's Appeal*, 99 Pa. St. 513, cited by appellant, were decided. In *Bohmer v. City Bank*, 77 Va. 445, a lien was provided for by the charter, but the law governing those cases was not similar to ours. Section 1507 of our statute (1 Hill's Code, Bal. Code, § 4262), after providing the manner of making calls for subscriptions and assessments, proceeds as follows:

"If after such notice has been given, any stockholder shall make default in the payment of assessments upon the

shares held by him, so many of said shares may be sold as will be necessary for the payment of the assessment upon all the shares held by him, her or them. The sale of said shares shall be made as prescribed in the by-laws by the company, but shall in no case be made at the office of the company."

This section, it will be perceived, provides for forfeiture and sale of the stock for delinquent assessments, but in such cases the authorities all seem to hold that the power to sell must be exercised strictly in accordance with the mode prescribed by the statute. 2 Thompson, Commentaries on the Law of Corporations, § 1766, and cases cited. *Budd v. Multnomah St. Ry. Co.*, 15 Ore. 413 (3 Am. St. Rep. 169, 15 Pac. 659).

Morawetz lays down the doctrine upon the subject of forfeitures as follows:

" The members of a corporation may be compelled to contribute their respective shares of the capital stock by an action at law brought in the name of the corporation; and, at common law, this is the only remedy which can be resorted to. A corporation has no lien upon the shares of its members to secure the payment of assessments, unless it be expressly conferred by provision of the charter, by general statute, or by special agreement between the parties. Nor can the shares of a member be declared forfeited and sold by the agents of the company for non-payment of assessments, except by virtue of an express grant of authority. Even the holders of a majority of shares in a corporation have no implied authority to bind a minority through a by-law providing for a forfeiture and sale of the shares of those members who fail to contribute their proportion of the capital; there must be an express grant of authority. The power of forfeiture depends upon the consent of the shareholders; and, therefore, a forfeiture can be declared by a corporation in a foreign state only if authorized by the charter or the general laws under which the company was formed. In many instances, however, it has been pro-

vided in charters and general incorporation laws that the shares of a stockholder may be declared forfeited and sold for non-payment of assessments. A power of this character must be construed strictly, and the validity of a forfeiture and sale of the shares of a member depends upon a strict compliance with the formalities prescribed." 1 Morawetz, Private Corporations (2d ed.), §§ 122, 123.

See, also, § 201, and Boone on Corporations, 119. And we have seen no case announcing a contrary doctrine.

In *Budd v. Multnomah St. Ry. Co., supra,* the statute of Oregon provided that corporations may make by-laws for the sale of stock for unpaid assessments. The plaintiff, a shareholder in the railway company, had not paid a call made by the directors, who by resolution ordered his stock to be sold by the secretary of the company, which was accordingly done. The court held that the sale was illegal and void because the corporation had never made and adopted a by-law providing for such sale. It is claimed, however, by the learned counsel for the appellant that that case is not authority here, for the reason that the statute of this state is unlike that under which the decision was made. But it seems to us that the same principle must be applied in the determination of the case at bar. The statute having provided that sales of shares shall be made as prescribed in the by-laws by the company, it would seem to be clearly the intention of the legislature that sales could not be made in any other manner, and in this case it is conceded that there was no by-law prescribing the manner of making such sales. But it does not follow from this that the shares of delinquent stockholders are in no manner liable for their debts to the corporation. The corporation still has the common law right to sue its stockholders for the amount of their subscriptions or the assessments upon their stock, and such stock may be sold upon execution like any other personal property. The law, however, clearly recognizes the

right of a stockholder to pledge his stock, and it was decided by this court, in *Port Townsend National Bank v. Port Townsend Gas & Fuel Co.*, 6 Wash. 597 (34 Pac. 155), that the right of a pledgee of stock is superior to that of a purchaser on execution against the pledging stockholder. Although it appears that both Curry and Clise are insolvent, yet that will not prevent the Investment Company from obtaining judgment against them for the amount of the calls made by the trustees and selling their respective shares of stock upon execution, subject to the lien of the Washington Savings Bank. See *Puget Sound, etc., R. R. Co. v. Ouellette*, 7 Wash. 265 (34 Pac. 929).

The judgment of the superior court is affirmed.

REAVIS, DUNBAR and GORDON, JJ., concur.