[No. 14013.   Department Two.   August 29, 1917.]

JANE MITCHELL *et al.*, *Appellants*, v. BLUE STAR MINING COMPANY *et al.*, *Respondents*.[1]

APPEAL—REVIEW—PRESUMPTIONS—BURDEN TO SHOW ERROR. In the absence of anything in the record as to the nature of assessments upon which capital stock was sold, it will be presumed on appeal, in aid of a judgment, that the assessments were in the nature of calls on unpaid subscriptions for which the stock could be sold under Rem. Code, § 3694.

CORPORATIONS—STOCK—SALES ON ASSESSMENTS—STATUTES. A sale of stock for unpaid assessments is not invalid because a by-law authorized such sales "at the office" of the company, in contravention of Rem. Code, § 3694, where the by-law was amended long prior to the sale.

SAME. The sale of corporate stock for unpaid assessments, held by a licensed auctioneer on the street in front of the doors of a building in which the corporation had its office, is not a sale "at the office" of the corporation, prohibited by Rem. Code, § 3694.

SAME—SALE OF STOCK ON ASSESSMENT—NOTICE—PLACE OF SALE—STATUTES. Rem. Code, § 3694, providing that sales of capital stock for unpaid assessments shall be held as prescribed in the by-laws

[1]Reported in 167 Pac. 130.

does not require that the by-laws fix the place of sale, and the provision in the statute requiring notice to be published is satisfied where the notice gave both time and place.

SAME—STOCK—REDUCTION—PURCHASE OF OWN STOCK. A corporation may acquire its own stock at a sale for unpaid assessments on stock subscriptions, without infringing the rule against a reduction of its capital stock; since the subscription constituted an indebtedness.

Appeal from a judgment of the superior court for Stevens county, Blake, J., entered May 29, 1916, in favor of the defendants, dismissing an action to vacate a sale of corporate stock, tried to the court. Affirmed.

*Tolman, King & Way* and *John Salisbury*, for appellants.

*L. C. Jesseph*, for respondents.

FULLERTON, J.—The plaintiffs were stockholders in the Blue Star Mining Company. For the purpose of paying certain corporate debts, the corporation named, through its board of trustees, levied three assessments upon their stock, each assessment at the rate of one mill per share, making the calls therefor in the months of August, September, and October, 1913. The plaintiffs refusing to pay, their stock was advertised for sale and sold, the larger portion of the stock being purchased by the mining company and placed in its treasury stock, the balance being purchased by various individuals. The plaintiffs brought this action to set aside the sale as illegal. After a trial upon the merits before the court, judgment was rendered dismissing the action. The plaintiffs appeal.

The first contention is that there is no authority under the laws of this state for the sale of stock upon default in payment of assessments levied thereon, except in case of assessments upon unpaid subscriptions to the capital stock, and that this assessment was one made upon fully paid up capital stock and was not upon a call for unpaid subscriptions. But the record, as we read it, does not suggest the issue. True, it is alleged that the assessment was illegally levied and is

void and of no effect. But, if this is an allegation of fact at all, it is as applicable to the one form of assessment as the other. The record itself is, moreover, singularly silent on the question. We do, however, find the following in the statement of facts:

"The Court: The whole question turns upon whether or not this assessment can be made upon the capital stock of the corporation, other than a subscription assessment; is that the point? Mr. King [of counsel for the plaintiffs]: No; our contention is that the stock was sold at a place forbidden by statute; that the taking of the stock by the defendant company was unlawful, and that the amendment to the by-laws was not legally passed—the statute prohibiting the sale of this stock at the office of the company."

The evidence was directed to the issues thus stated by counsel, and the nature of the particular assessments was not made to appear. But as error is never presumed but must affirmatively appear, this fact does not call for a reversal. Sales of stock on assessments in the nature of calls on unpaid subscriptions are authorized by statute (Rem. Code, § 3694), even if sales on other forms of assessments are not, and in aid of the judgment this court will presume that the sale was made on a form of assessment in which it could be lawfully made.

The second contention is that the by-laws of the corporation authorizing a sale of stock for unpaid assessments were void, because they provided for the sale of the stock at the office of the company, in contravention of the statute (Rem. Code, § 3694) directly prohibiting sales to be so made. But while the by-laws as originally enacted did contain such a provision, they were amended in this respect long prior to the sale here in question. The legality of this amendment is also questioned, but, without reviewing the record, we find that it was made at a regular meeting of the stockholders of the corporation at which a majority of the stock was represented, and is sufficiently regular in other respects.

7—98 WASH.

In making the sale of plaintiffs' stock, the sale was held on the street by a licensed auctioneer, in front of one of the doors to the building in which the mining company had its office. Appellants maintain this was in fact a sale "at the office of the company," in contravention of the statutory provision before mentioned. But it seems to us that the primary object of this statute is to secure publicity in the sale of corporate stock, and to prevent sales behind closed doors of private offices. While the word "at" often has the significance of "near," it as frequently means "in." It should be interpreted both with reference to its context where used and with reference to the object sought to be attained. In the present case, it is clear that the statute requires a public sale, where all may feel free to attend and where the sale may be conducted in the public view; conditions not readily attainable in a private office. Under a statute of Mississippi, the county board of supervisors was required to hold its meetings "at the court house." The board held a meeting at the chancery clerk's office, a hundred feet distant from the court house, at which an election was ordered. The court held that the word "at" was synonymous with "in," and that the election order was void because the meeting was not held in the courthouse. *Harris v. State,* 72 Miss. 960, 18 South. 387, 33 L. R. A. 85. For other cases construing "at," as meaning "in" or "within," see: *Jenkins v. State,* 4 Ga. App. 859, 62 S. E. 574; *Kaler v. Tufts,* 81 Me. 63, 16 Atl. 336; *Williams v. Ft. Worth & N. O. R. Co.,* 82 Tex. 553, 18 S. W. 206; *Halstead v. Woods,* 48 Ind. App. 127, 95 N. E. 429; *Mohawk Bridge Co. v. Utica & S. R. R. Co.,* 6 Paige (N. Y.) 554. We think it evident that, as the legislature only intended to prohibit sales of corporate stock for nonpayment of assessments within the office of the company, the company did not infringe the statute in holding such sale on the street in front of their office building.

The appellants further contend in this connection that, inasmuch as Rem. Code, § 3694, provides every essential de-

tail of the sale except that of place of sale, it was incumbent that the by-laws name the place, since the statute prescribes that "the sale of said shares shall be made as prescribed in the by-laws by the company." In support of their position, they cite *Dearborn v. Washington Savings Bank*, 18 Wash. 8, 50 Pac. 575, where a sale was held void because no provision therefor was made in the by-laws. In that case we said:

"The statute having provided that sales of shares shall be made as prescribed in the by-laws by the company, it would seem to be clearly the intention of the legislature that sales could not be made in any other manner, and in this case it is conceded that there was no by-law prescribing the manner of making such sales."

A reference to the by-laws will show that they fully prescribe the manner of making such sales, except naming a place. The statute does not expressly or impliedly provide, in enumerating the necessary conditions attending such sales, that the place thereof shall be named in the by-laws. Nor would such a provision be a reasonable one, since the place as well as the time of such sales is not a matter of permanency, but is subject to the fluctuating demands of expediency. The provision of the statute requiring notice of such sales to be published contemplates that 'the notice shall name both place and time, since those are two of the essential factors necessarily to be included in due notice. We think there was no necessity under our statute for the by-laws to name the place of sale, and that proper notice thereof was all that was required.

The final contention of appellants is that, "The pretended purchase by the company of the shares of stock constituted a reduction of the capital stock of the company, and was without authority of law and void." It appears from the evidence that the assessments upon the corporate stock were made for the purpose of liquidating certain indebtedness of the corporation, amounting to something like $12,000. On the sale of the shares of plaintiffs for nonpayment of their

assessments, some of the stock was bid in by individuals, but the major portion was taken by the corporation and placed in its treasury stock to be disposed of for the benefit of the mining company. The rule undoubtedly prevails in this state that a corporation cannot ordinarily purchase its own stock, since such a transaction would amount to a reduction of its capital stock in contravention of our statute. *Tait v. Pigott*, 32 Wash. 344, 73 Pac. 364; *Tait v. Pigott*, 38 Wash. 59, 80 Pac. 172; *Kom v. Cody Detective Agency*, 76 Wash. 540, 136 Pac. 1155, 50 L. R. A. (N. S.) 1073. But it has been also held by this court that a corporation may acquire its own capital stock in settlement of an indebtedness to it. *Barto v. Nix*, 15 Wash. 563, 46 Pac. 1033. The general rule is to the same effect. In 7 R. C. L. 552, it is said:

"The power of a corporation to take its own stock in payment of an indebtedness owing to it is generally recognized even in jurisdictions which deny that such power impliedly exists, or where the statutes contain a prohibition against so doing. This exception is supposed to rest on a necessity which arises in order to save loss;"

citing *Schulte v. Boulevard Gardens Land Co.*, 164 Cal. 464, 129 Pac. 582, Ann. Cas. 1914B 1013, 44 L. R. A. (N. S.) 156; *Crandall v. Lincoln*, 52 Conn. 73, 52 Am. Rep. 560; *Coppin v. Greenlees etc. Co.*, 38 Ohio St. 275, 43 Am. Rep. 425.

So far as appears from the record in the case at bar, the assessments levied upon the appellants' stock were against their unpaid stock subscription. This constituted an indebtedness for which the company could purchase at the sale.

The judgment is affirmed.

ELLIS, C. J., HOLCOMB, MOUNT, and PARKER, JJ., concur.