[No. 22101. Department Two. January 21, 1930.]

DANA CHILD, *Respondent*, v. IDAHO HEWER MINES, INCORPORATED, *Appellant*.[1]

[1]Reported in 284 Pac. 80.

*Reese H. Voorhees,* for appellant.
*O. C. Moore,* for respondent.

FRENCH, J.—This suit was brought by respondent for the purpose of recovering certain stock of the appellant corporation. A demurrer was sustained to the answer, and, the appellant declining to plead further, a decree was entered. This appeal follows.

Because of the character of the action, the nature of the defense and the many allegations contained in the answer, the pleadings have been set forth in full. The complaint, omitting the formal parts, reads as follows:

"I.

"That, at all times in this complaint mentioned, the above named defendant was and now is a corporation, organized and existing under and by virtue of the laws of the state of Washington, with its principal place of business in the city of Spokane, Washington.

"II.

"That, at all the times in this complaint mentioned, plaintiff was and now is the owner of 15,000 shares of the capital stock of defendant corporation, evidenced and represented by stock certificate number 168 of defendant corporation.

"III.

"That on or about the 15th day of May, 1926, said stock certificate was received and thereafter held in trust by defendant for the use and benefit of plaintiff, pursuant to the following written trust agreement, to wit:

" 'No. 166    Incorporated under the laws of    15,000
the State of Washington.
IDAHO HEWER MINES, INC.
Non-Transferable Interim Certificate.

" 'THIS CERTIFIES, That certificate No. 168 for fifteen thousand shares of the capital stock of Idaho Hewer Mines, Inc., par value one cent, par fully paid, has this day been issued in the name of DANA CHILD, that said shares are assessable in the sum of TEN CENTS over and above par value, and that said certificate is held in trust by IDAHO HEWER MINES, INC., subject to the following conditions: That the owner thereof has all the rights, privileges and liabilities of a stockholder in said IDAHO HEWER MINES, INC., except that said owner shall not sell nor offer for sale any of the said shares while so held in trust; that this interim certificate is NON-TRANSFERABLE: That the period said certificate shall be held in trust is two years from April 14th, 1926, provided, that the board of trustees of IDAHO HEWER MINES, INC., may, in its discretion, terminate said period and thereupon direct the aforesaid certificate of stock to be delivered.

" 'DATED at Spokane, Washington, this 15th day of May, 1926.                Idaho Hewer Mines, Inc.,
" 'By H. O. Kent, Secretary.'

"IV.

"That subsequently to the 15th day of May, 1928, defendant wrongfully and without reason therefor, has failed, neglected and refused and now refuses to return or deliver said stock certificate to plaintiff, though requested by him so to do.

"WHEREFORE, Plaintiff prays the issuance of an order and decree of this court adjudging plaintiff to be the owner of the aforesaid 15,000 shares of the capital stock of defendant corporation, and directing and requiring defendant to turn over and deliver to plaintiff

the aforesaid stock certificate, together with such other and further relief as in the premises may to the court seem equitable and just, and that plaintiff have and recover his costs and disbursements herein expended.

"O. C. Moore,
"Attorney for Plaintiff."

To this complaint, the following answer was interposed:

"I.

"Defendant admits that plaintiff was the owner of 15,000 shares of the capital stock of this defendant corporation, but denies that the plaintiff is now the owner of any of the shares of the capital stock of defendant corporation.

"II.

"Defendant admits that plaintiff received and was the owner of the instrument in writing set out in paragraph III of plaintiff's complaint, and denies each and every other allegation, matter and thing in said paragraph contained.

"III.

"Answering paragraph IV, defendant admits that it refused and now refuses to return or deliver any stock certificate to plaintiff, but denies that said refusal is wrongful or unlawful and alleges the fact to be that during the time the plaintiff held the interim certificate set out in paragraph III of the plaintiff's complaint, all the right, title and interest of said plaintiff in the stock certificate mentioned in said interim certificate was sold to and acquired by this defendant for non-payment of assessments as set forth in the affirmative defense herein.

"And for a further and affirmative defense, this defendant alleges the following facts:

"I.

"That this defendant is a corporation duly organized and existing under and by virtue of the laws of the state of Washington, having been incorporated on the 29th day of March, 1926, and that said corporation has paid its last annual license fee due the state of Washington.

"II.

"That by the articles of incorporation of this answering defendant, it was provided that all the capital stock of said corporation should be subject to assessments over and above their par value in the aggregate amount of 10 cents per share, and providing for the levy of said assessments from time to time when deemed expedient by the board of trustees, and providing that if any stockholder make default in the payment of any assessment, so much of the stock of said shareholder might be sold as should be necessary for the payment of the assessment upon all the stock held by him as provided in the by-laws of said corporation, and that in that behalf a full, true and correct copy of article III of the articles of this defendant corporation is hereto attached marked 'Exhibit A' and made a part of this amended answer, and is hereby referred to for greater particularity.

"III.

"That by article II of the articles of incorporation of this answering defendant, in paragraph 10 thereof, it was provided that this answering defendant shall have the power, among other powers, to acquire by purchase or otherwise, hold and dispose of the stock of this defendant corporation, and that in that behalf a full, true and correct copy of said paragraph 10 of said article II of the articles of incorporation of this defendant corporation is hereto attached, marked 'Exhibit C,' and made a part of this amended answer, and is hereby referred to for greater particularity.

"IV.

"The by-laws of this answering defendant were adopted at a meeting of the trustees of this defendant on the 2nd day of April, 1926, and ever since have been and now are the existing by-laws of said corporation, and by article XVIII of said by-laws it is provided that the stock of defendant corporation is subject to assessments over and above its par value from time to time in the discretion of the board of trustees to the extent in the aggregate of 10 cents per share, and that when said board of trustees shall levy an assessment they shall have power to demand and call in from the

stockholders the sum or sums so assessed, and that if any stockholders shall make default in the payment of the assessment therein required, the shares of stock on which such default in payment has been made shall be sold by the president or secretary of defendant corporation, and that this defendant corporation may bid and purchase at such sale for the amount of such assessment and expenses all of which more fully and at large appears from the said by-laws, a copy of which is hereto annexed, marked "Exhibit B," and made a part of this amended answer, and is hereby referred to for greater particularity.

"V.

"That every certificate of stock of this answering defendant bears upon its face the statement that the same is subject to assessments of 10 cents per share over and above its par value.

"VI.

"That on or about the 15th day of May, 1926, the plaintiff became the owner of 15,000 shares of capital stock of this defendant, which said capital stock was represented by stock certificate No. 168 of this corporation. That said stock certificate was delivered to this answering defendant and kept and retained by it, and in lieu thereof there was issued to the plaintiff a non-transferable interim certificate, a copy of which is set out in full in the plaintiff's complaint, made a part hereof and is hereby referred to for greater particularity. That at the organization of defendant corporation a certain amount of its corporate stock was returned to said corporation and was retained in its treasury to be thereafter sold, as opportunity served, at the best price obtainable, the proceeds to be used in the development and prosecution of the corporation's mining enterprise. That all certificates of stock which were issued, including said certificate No. 168, except said treasury stock, were retained in the possession of the defendant corporation, and interim certificates, including that set out in plaintiff's complaint, were issued in lieu thereof, for the purpose and with the object of maintaining the most profitable market for the said treasury stock by preventing the privately

owned stock being placed upon the market and thus lowering the price which the treasury stock, if having an exclusive market, might bring.

## "VII.

"That thereafter the board of trustees of this answering defendant, at each of the times hereinafter stated, levied an assessment equal to one-half of one cent per share upon the outstanding capital stock of this defendant. That by resolution the said assessments were each made payable at the respective times hereinafter stated and it was provided that the same became delinquent at the times hereinafter stated, to wit:

| Assessment Nos. | Date Levied | Date Payable | Date Delinquent |
|---|---|---|---|
| 1 | Apr. 30, 1926 | May 15, 1926 | May 16, 1926 |
| 2 | May 18, 1926 | June 10, 1926 | June 11, 1926 |
| 3 | June 8, 1926 | July 10, 1926 | July 11, 1926 |
| 4 | July 13, 1926 | Aug. 10, 1926 | Aug. 11, 1926 |
| 5 | Aug. 10, 1926 | Sept. 10, 1926 | Sept. 11, 1926 |
| 6 | Sept. 14, 1926 | Oct. 10, 1926 | Oct. 11, 1926 |
| 7 | Oct. 25, 1926 | Nov. 10, 1926 | Nov. 11, 1926 |
| 8 | Nov. 9, 1926 | Dec. 10, 1926 | Dec. 11, 1926 |
| 9 | Dec. 14, 1926 | Jan. 10, 1927 | Jan. 11, 1927 |
| 10 | Jan. 11, 1927 | Feb. 10, 1927 | Feb. 11, 1927 |
| 11 | Feb. 8, 1927 | Mar. 10, 1927 | Mar. 11, 1927 |
| 12 | Mar. 8, 1927 | Apr. 10, 1927 | Apr. 11, 1927 |
| 13 | Apr. 12, 1927 | May 10, 1927 | May 11, 1927 |
| 14 | May 10, 1927 | June 10, 1927 | June 11, 1927 |
| 15 | June 14, 1927. | July 10, 1927 | July 11, 1927 |
| 16 | July 12, 1927 | Aug. 10, 1927 | Aug. 11, 1927 |
| 17 | Aug. 9, 1927 | Sept. 10, 1927 | Sept. 11, 1927 |
| 18 | Sept. 13, 1927 | Oct. 10, 1927 | Oct. 11, 1927 |

"That to each and every of said several assessments the said board of trustees of this defendant caused written notice to be given to the said several assessments stating the sum or sums of such assessments and the time and manner of payment, and further stating that if any stockholder make default in the payment of the assessment upon the shares held by such stockholder, so many of the shares of such stockholder will be sold as will be necessary for the payment of the assessment upon all the shares held by such stock-

holder; that the notice was signed by the president and secretary of said corporation and was given to each stockholder, and particularly to this plaintiff, by mailing to each stockholder separately, and to this plaintiff, at his or her address more than fifteen days prior to the date fixed for the payment of said assessment.

"VIII.

"That this plaintiff paid assessments 1 to 14, inclusive, so levied as aforesaid, but failed, refused and neglected to pay assessments Nos. 15, 16, 17 and 18, or any part of said assessments or any of them. That each of the said assessments became delinquent by the terms thereof in the year 1927, and were delinquent on the 10th day of October, 1927, and that thereafter and on, to wit, the 10th day of November, 1927, the board of trustees of this defendant corporation gave notice that the stock of all the shareholders who were delinquent in the payment of said several assessments, including the plaintiff, would be sold at public auction to the highest bidder; that said notice was published for five successive publications in the Weekly Chronicle, a newspaper published in Spokane county, state of Washington; that said notice stated the name of this corporation, its principal place of business, and that there was delinquent upon the said stock of this plaintiff described therein on account of said assessments, for the payment of which the plaintiff was delinquent the sum of $300, the date of the said levies, and the several amounts of said indebtedness was set opposite the names of said respective shareholders, and particularly of this plaintiff, which said notice stated the number of certificates and shares of said stockholders, and particularly of this plaintiff, and stated that so many of the shares of the said several stockholders and of this plaintiff would be sold as was necessary for the payment of the delinquent assessments upon the shares held by said stockholders, and by this plaintiff, and for the expense of advertising sale; that said notice further stated that said sale would be made at public auction at the front door of the Spokane county court house on the 10th day of December, 1927, at the hour of 10 o'clock a. m., on said day; that said notice was signed by the secretary of this defendant.

## "IX.

"That at the time and place named in said notice, to wit, at the front door of the Spokane county court house in Spokane, Washington, on the 10th day of December, 1927, at the hour of 10 o'clock a. m., on the said date, the president of this defendant attended and offered and exposed for sale in accordance with the terms of said notice all of the stock of the delinquent stockholders, and particularly the said 15,000 shares of stock theretofore owned by this plaintiff, and no other bidder appearing at said sale, and there being no other bid offered therefor, the defendant corporation bid the amount of the unpaid assessments upon the said stock, and the whole thereof, to wit the sum of $300 for the said stock, and all of the said stock theretofore owned by this plaintiff was thereupon struck off and sold to this answering defendant and thereupon became, and ever since has been, and now is the property of this answering defendant.

"WHEREFORE, this defendant prays that the plaintiff take nothing by his said action, and that the same be dismissed, and that the defendant go hence with its costs and disbursements.

"VOORHEES & CANFIELD

"Attorneys for Defendant

"State of Washington ⎱
"County of Spokane ⎰ ss

"D. M. Drumheller, being first duly sworn, on oath says: That he is the president of the above named defendant corporation; that he makes this affidavit for and on behalf of said corporation for the reason that affiant is the managing agent, to wit, the president thereof; that he has read the above and foregoing answer, knows the contents thereof, and that the same is true as affiant verily believes.

"D. M. Drumheller

"Subscribed and sworn to before me this 31st day of December, 1928.          Reese H. Voorhees,

"Notary Public in and for the State of Washington, residing at Spokane, Washington.

## "Exhibit 'A'
## "Article III

"That the capital stock of this corporation shall be twenty thousand dollars ($20,000), and the same shall be divided into two million (2,000,000) shares of the par value of one (1) cent per share, and said shares of stock shall be issued subject to assessments over and above their par value in the aggregate amount of ten (10) cents per share; and such assessments may be levied, from time to time, as and when deemed expedient by the board of trustees, and if any stockholder shall make default in the payment of any assessment upon the shares held by him, so many of said shares may be sold as will be necessary for the payment of the assessment upon all the shares held by him as provided in the by-laws of this corporation; Provided, said assessments shall not be levied in excess of one-half (½) cent per share in any calendar month.

## "Exhibit 'B'
## "Article XVIII

"*Assessments on stock—failure to pay—sale, etc.*

"The stock of this corporation is subject to assessments over and above its par value, from time to time, in the discretion of the board of trustees, to the extent in the aggregate of ten (10) cents per share.

"When the board of trustees shall levy any assessment, they shall have the power to demand and call in from the stockholders, the sum or sums so assessed, at such time and in such manner, payments or installments as they may deem proper, and the board of trustees shall cause written notice to be given of any such assessment, stating the sum or sums of such assessment, and the time or times and manner of payments, whether all together or by installments, as the board may deem proper, and further stating that if any stockholder shall make default in the payment of the assessment upon the shares held by such stockholder, so many of the shares of such stockholder will be sold as will be necessary for the payment of the assessment upon all the shares held by such stockholder. Said notice shall

be signed by the president or secretary, or his name affixed thereto in print, and given to each stockholder personally by mailing to each stockholder, at his or her address on the books of the company, at least fifteen days prior to the date fixed for payment of said assessment, or notice of such assessment may be given by publication in some newspaper published in Spokane county, Washington, said publication being at least fifteen days prior to the date of payment fixed therein. If after such notice has been given, any stockholder shall make default in the payment of the assessment as therein required, upon any shares held by him, the shares of stock on which such default in payment has been made shall be sold by the president or secretary of this corporation. No sale, however, shall be made except at public auction, to the highest bidder, after a notice of four weeks, published in some newspaper published in Spokane county. Such notice shall state the name of the corporation and its principal place of business, and that there is delinquent upon the stock described therein, on account of an assessment or assessments levied on the date or dates thereof, the several amounts set opposite the names of the respective shareholders, and shall state the number of the certificate and shares of each; and further stating that so many of the shares of each stockholder will be sold as will be necessary for the payment of the delinquent assessment or assessments upon the shares held by each and the expenses of advertising and sale, and that the sale will be made at public auction, giving the time and place thereof, the notice to be signed by the president or secretary or his name affixed thereto in print. At such sale the person or persons who shall pay the assessment or assessments so due upon any shareholder's shares, together with the expenses of advertising and sale, for the smallest number of such shares, or portion of a share as the case may be, shall be deemed the highest bidder, and the stock so bid for shall be, upon such payment being made, transferred and delivered to such bidder; or, in place of present actual delivery a non-transferable interim certificate may be given therefor, providing that said shares shall

not be delivered for two years, during which period they shall not be sold or offered for sale, if so ordered by the board of trustees, unless otherwise directed during said period by said board. Provided, however, that no such sale shall be made at the office of the company. And provided further, that this corporation may bid and purchase at such sale for the amount of such assessment and expenses.

"Exhibit 'C'

"Article II Paragraph 10

"To issue both preferred and common stock, and accept payment of subscriptions therefor, in such installments or in such manner, on such terms and in money or in such property, real or personal, or both, as shall be determined by the board of trustees; to borrow money, issue notes, bonds, debentures and other evidences of indebtedness and to mortgage any or all of its real or personal property, and to acquire, hold, and dispose of options and bonds, notes, and mortgages of other corporations, and of individuals; to subscribe for, acquire by purchase or otherwise, and to own, hold, sell, assign and transfer shares of the capital stock of any other corporation and to exercise all the rights of a stockholder; to acquire by purchase or otherwise, hold and dispose of the stock and bonds of this corporation."

It was to this answer that the demurrer was sustained on the ground that the facts therein stated did not constitute a defense.

The reason for the decision, as we gather from the record, was that, by issuing the interim certificate, a copy of which is set forth, the corporation became a trustee for the stockholder and as such trustee held respondent's stock, and that a trustee can not, at a sale made by him as trustee, become a purchaser of the articles which are the subject of his trust. If the legal effect of the interim certificate was to make the corporation a trustee for respondent in the broad sense in which that term is usually used, then, of course, it

must be admitted that practically all courts, including our own, hold that a trustee can not purchase the property of the *cestui que trust* regardless of his good faith. It becomes necessary, then, to consider the objects and purposes to be served by the transactions which took place between respondent and appellant, and the legal effect of the so-called interim certificate, together with the necessary powers, rights and duties of each in their dealings one with the other.

The answer conclusively shows that, when certificate No. 168, being the certificate in question, was issued and respondent became a stockholder in appellant company, this stock was taken subject to the right on the part of the corporation to levy an assessment of ten cents a share on such stock. It is alleged in the answer that the original stock certificate so provided, the interim stock certificate so provides, it is so provided in the articles of incorporation and also in the by-laws. The by-laws also provide the manner and method of levying and collecting such assessments. The authorities all hold that provisions such as these incorporated in the articles of incorporation and by-laws of a company have the force and effect of a contract between the stockholder and the corporation. *Seattle Trust Co. v. Pitner,* 18 Wash. 401, 51 Pac. 1048. That the corporation, in proceeding to levy and collect this assessment, may provide as to the manner and means of so doing, as shown by the answer in this case, and that this method is a proper method under the provisions of the laws of this state, see *Mitchell v. Blue Star Mining Co.,* 98 Wash. 191, 167 Pac. 130.

Let us consider, then, the provisions of this interim certificate, for, in the absence of the interim certificate, there can be no question under the laws of this state, as construed in the case of *Mitchell v. Blue Star Mining Co., supra,* but that the sale was properly

authorized and properly conducted. The interim certificate purports to make the company a depository of the original certificate of stock, No. 168, for fifteen thousand shares. It provides that the owner has all the rights, privileges and liabilities of a stockholder except the right of sale of the stock.

When we consider the fact, as shown by the answer, that the company was attempting in every way to sell its treasury stock in order to raise funds to prosecute its business and develop its property, and that the evident purpose of depositing all certificates of stock with the company and issuing what purported to be non-assignable interim certificates was to keep the market free from competing privately-owned stock, the end sought to be accomplished becomes apparent. The company at no time purported to relinquish its right to levy and collect the assessment. On the contrary it was at all times asserting its right—in its articles of incorporation, its by-laws and in the interim certificate itself. As we read this interim certificate, it purports to make appellant not a trustee of the stock, but a trustee for the holding of the certificate.

But the certificate is not the stock. It is but the evidence of title to the stock, and all the interim certificate does is to designate the depository where the evidence is lodged, together with an agreement that the stock shall not be sold. In the absence of this agreement not to sell, or if purchased by one who had no knowledge of such an agreement, it cannot be questioned but that respondent could at any time have sold and conveyed good title to the fifteen thousand shares of stock, even though the actual certificate was in the custody of the corporation itself. That there is a vast difference between the stock of a corporation and the certificates of stock, that they are not the same, that the certificate is but the evidence of title, and that the

stock itself, or the interest which the stockholder has in the corporation is not dependent upon the certificate, see Cook on Corporations (5th ed.), vol. 5, p. 49, § 13; Fletcher's Cyclopedia of Corporations, p. 5604; and the rule there announced was squarely followed by this court in the case of *Gamble v. Dawson*, 67 Wash. 72, 120 Pac. 1060, Ann. Cas. 1913D 501, where this court said:

" . . . but the substance of all judicial announcements is that the shares represent an undivided interest in all of the property of the corporation, and that the same right exists whether any certificate to the share has been issued or not; that the issuance of the certificate in no wise affects the right of the shareholders."

So that, if the trust existed at all, if one was created by the interim certificate, the subject of the trust was only certificate No. 168. The assessments were levied on shares of stock. It was shares of stock which were sold to satisfy the assessments. It was the shares of stock which the company purchased, there being no other bidder. That the company could properly buy these, see *Mitchell v. Blue Star Mining Co., supra.*

It is also claimed by respondent that it clearly appears that the shares of stock were purchased at such an inadequate price as to conclusively avoid the entire transaction on the ground of fraud. But the burden is upon the one alleging fraud, and there is no necessity of pleading non-fraud where none is alleged. *Crandall v. Lee*, 89 Wash. 115, 154 Pac. 190.

It is also suggested by respondent that the by-law of the company, authorizing and permitting the company to purchase the stock where no one else will bid at a public auction on a sale such as this, constitutes a reduction of the capital stock and violates our statutes and is void. But this court has held contrari-

wise in *Mitchell v. Blue Star Mining Co., supra.* That case is sought to be distinguished on the ground that it was a call on unpaid subscriptions, but, as heretofore stated, these shares of stock were taken by respondent in the first instance subject to the ten-cents-a-share assessment, and when the assessment was legally made, the unpaid portion became a debt due the corporation. We do not find it necessary to decide whether this was a personal debt of the stockholder or whether the company could look to the stock only. In either event, it was a debt due.

We hold that, under the interim certificate as issued, the appellant did not become a trustee for the shares of stock, as that term is ordinarily used, but became only custodian of the certificate for the purpose of withdrawing the shares from the market; that respondent still had all of the rights and liabilities of any other stockholder; that what was sold by the corporation was not the certificate No. 168, but, as shown by the answer, it was the shares of stock, and that the answer shows that they were properly and legally sold, and the answer as pleaded constitutes a legal defense to the complaint.

Reversed and remanded for further proceedings in accordance with this opinion.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur.

HOLCOMB, J., dissents.