JESSON et al. v. NOYES.

(Circuit Court of Appeals, Ninth Circuit. August 20, 1917. Rehearing Denied October 8, 1917.)

No. 2528.

1. EQUITY ⬤=➪148(1)—JOINDER OF CAUSES OF ACTION.
   The court, under Alaska statute as to joinder of causes of action, had discretion to permit the joinder of causes of action for diminishing the assets of the bank by permitting subscribers to surrender stock and for declaring an illegal dividend.

2. BANKS AND BANKING ⬤=➪77(6)—UNLAWFUL ACTS OF OFFICERS—COMPLAINT.
   In a suit by the receiver of an insolvent bank against former directors and officers to recover assets illegally diverted, a complaint alleging that the dividend was wrongfully, unlawfully, and fraudulently declared and paid, setting forth facts to sustain the allegation, and alleging facts to show that the money paid out for the surrender of stock certificates was fraudulently and illegally paid out of the capital of the corporation, stated a cause of action at common law.

3. EVIDENCE ⬤=➪35—JUDICIAL NOTICE—STATE STATUTE.
   The District Court of Alaska may take judicial notice of the statutes of a state.

4. BANKS AND BANKING ⬤=➪91—PURCHASE OF CAPITAL STOCK BY BANK.
   Under Corporation Act of Nevada (Laws 1903, c. 88) § 68, Rev. Laws, § 1169, providing that it shall not be lawful for the trustees or directors to divide or withdraw, or in any way pay to the stockholders, any part of the capital stock of the company, nor reduce the capital stock, unless in the manner prescribed, it was illegal for the bank to purchase at par value its stock from stockholders, and pay therefor out of the capital, and not the surplus, of the bank.

5. BANKS AND BANKING ⬤=➪77(6)—ILLEGAL PURCHASE OF STOCK—ASSETS—SUFFICIENCY.
   In a suit to hold the directors of a bank liable for an illegal purchase for the bank of its stock, evidence *held* to support a finding that the directors had knowledge of the purchase.

6. BANKS AND BANKING ⬤=➪77(4)—ILLEGAL TRANSACTIONS—RECOVERY—SUBSEQUENT CREDITORS.
   Where, contrary to statute and not in good faith, the directors of a bank declared dividends out of its capital, and purchased for the bank its stock, the diverted funds may be recovered for subsequent creditors of the bank, in a suit against the directors and the sellers of the stock.

7. ACCORD AND SATISFACTION ⬤=➪26(3)—EVIDENCE—SUFFICIENCY.
   In a suit against former directors and officers of a bank, evidence *held* insufficient to show that certain deeds were accepted by the receiver from an ex-president in accord and satisfaction of the claims against the president, or any of the defendants.

8. ACCORD AND SATISFACTION ⬤=➪1—ELEMENTS.
   Accord and satisfaction requires an agreement, and must finally and definitely close the matter covered by it.

Appeal from the District Court of the United States for the Fourth Division of the Territory of Alaska; F. E. Fuller, District Judge.

⬤=➪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by F. G. Noyes, as receiver of the Washington-Alaska Bank, a corporation, against John A. Jesson and others. Decree for complainant, and defendants appeal. No error. Decree affirmed.

The appellee, as receiver of an insolvent bank, brought suit against the appellants, who had been the directors and officers of the bank, charging them with wrongful and negligent acts and conduct whereby the bank had been injured and its assets wasted, so that it became unable to pay its creditors, praying that an accounting be had and judgments rendered against the appellants for the amounts found to be due from them respectively. On January 21, 1908, the Fairbanks Banking Company, a corporation organized under the laws of the state of Nevada, began business at Fairbanks, Alaska. On September 14, 1910, the name of the corporation was changed to Washington-Alaska Bank. On January 5, 1911, receivers were appointed to take over the assets of the corporation and wind up its business. The court below found that certain of the appellants unlawfully diminished the assets and capital stock of the corporation, by permitting subscribers to surrender stock certificates which had been issued to them, and paying them the amount of their subscriptions, and that on April 12, 1910, the appellants Wood, McGinn, Brumbaugh, and Jesson declared a dividend upon the outstanding capital stock, at a time when the corporation had no undivided profits or surplus in excess of its liabilities, but was insolvent.

The findings of the court as to the surrender of the stock are in substance as follows: That, when stock was taken back by the corporation, the amount paid therefor was either paid in cash, or the notes held by the bank therefor were canceled and surrendered to the stockholders; that the bank had no surplus or undivided profits against which the same could be charged; that the taking back of said stock and such payment therefor was illegal and wrongful, and in violation of the laws of the state of Nevada, under which the corporation was organized; and that said stock surrenders were acquiesced in by said directors and in some instances were made under their direction and with their express approval.

As to the unlawful declaring of the dividend, the court found in substance as follows: That on April 12, 1910, the Fairbanks Banking Company, by its board of directors, declared a dividend of 20 per cent. on its then outstanding capital stock of $168,600, which dividend amounted to $33,720, and was paid to the stockholders of the bank, either in cash or by crediting the amount thereof upon notes due by the stockholders to the bank; that at that time the said Fairbanks Banking Company had no surplus or undivided profits out of which the dividend could be declared and paid, and said dividend was declared and paid in violation of the laws of the state of Nevada, and also in violation of the by-laws of the corporation, and was wrongful and illegal; that at the time when the dividend was declared and paid the appellants Wood, McGinn, Brumbaugh, and Jesson were members of the board of directors of said Fairbanks Banking Company, and gave their consent thereto.

By the decree it was adjudged that the appellee recover of and from the appellants Wood, McGinn, Brumbaugh, and Jesson, jointly and severally, the sum of $33,720; that he recover from the appellant J. A. Jesson the further sum of $13,400, by reason of the surrender of shares of capital stock made between July 13, 1908, and September 12, 1908; that he recover from the appellants Jesson and Hill, jointly and severally, the further sum of $1,500, by reason of the surrender of shares of capital stock between September 13, 1908, and October 13, 1908; that he recover from the appellants Jesson, Hill, and Peoples, jointly and severally, the further sum of $1,100, by reason of the surrender of shares of capital stock made between October 14, 1908, and March 13, 1909; that he recover from the appellants Jesson, Hill, and Brumbaugh, jointly and severally, the further sum of $1,000, by reason of the surrender of shares of capital stock made between March 14, 1909, and September 12, 1909; that he recover from the appellants Jesson, Brumbaugh, and McGinn, jointly and severally, the further sum of $3,000, by reason of the surrender of the capital stock made between September 13, 1909, and October 12, 1909; and that he recover from the appellants Jesson, McGinn, and Brumbaugh,

jointly and severally, the further sum of $1,000, by reason of the surrender of shares of the capital stock made between October 13, 1909, and January 18, 1910.

McGowan & Clark, A. R. Heilig, and John L. McGinn, all of Fairbanks, Alaska (Metson, Drew & Mackenzie, Curtis Hillyer, and Charles J. Heggerty, all of San Francisco, Cal., of counsel), for appellants.

O. L. Rider, of St. Louis, Mo., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] It is assigned as error that the court below overruled the demurrers which the appellants interposed to the amended complaint, on the ground that several causes of action had been improperly united therein. The statute of Alaska, concerning the joinder of causes of action, is identical with and is taken from the statute of Oregon, and before it was adopted for Alaska it had been construed by the Supreme Court of Oregon in Benson v. Keller, 37 Or. 120, 60 Pac. 918. In that case it was the opinion of the court that much must be left to the discretion of the court in determining whether a bill is multifarious. The court said that the objection of multifariousness—

"does not go to the merits of the cause, but relates more nearly to a question of convenience in conducting the suit; and, in large measure, it simply calls for an exercise of discretion in deciding whether both or all the causes of suit set forth in the bill shall be tried in a single suit, or be split up, and the parties be relegated to the bringing of two or more suits for the accomplishment of their purposes, or whether the defendant who is a necessary party in respect of one or more matters suggested by the complaint has a sufficient interest in or connection with the other matters involved to make him a proper party in respect to such other matters."

The court considered that the object of the rule against multifariousness is to protect the defendant from unnecessary expense; that the demurrer for multifariousness does not go to the merits of the controversy, but calls upon the plaintiff to go out of court and split up his demands and begin anew; and the court quoted from Lehigh Val. R. R. Co. v. McFarlan, 31 N. J. Eq. 706, 758:

"The rule with regard to multifariousness, whether arising from the misjoinder of causes of action or of defendants therein, is not an inflexible rule of practice or procedure, but is a rule founded in general convenience, which rests upon a consideration of what will best promote the administration of justice, without multiplying unnecessary litigation on the one hand, or drawing suitors into needless and unnecessary expenses on the other."

The object of the suit in Benson v. Keller was to cancel several duebills alleged to have been fraudulently procured from the plaintiff by one of the defendants, and thereafter transferred by him to others of the defendants severally. The court sustained the joinder, notwithstanding that it appeared that some of the defendants were put to additional expense by reason of the fact that the cause was tried away from their home counties. The plaintiff, in bringing the present suit, had in view but the single purpose of recovering the funds of the bank, which he alleged had been wasted by the directors. All the appellants had been directors. Jesson was director from March 12, 1908, to January 4, 1911; Peoples was director from October 14, 1908, to

April 24, 1909; Wood from November 13, 1909, to May 1, 1910; Brumbaugh from March 13, 1909, to September 12, 1910; Hill from September 12, 1908, to October 1, 1909; and McGinn from September 14, 1909, to May 1, 1910.

The appellants rely upon Emerson v. Gaither, 103 Md. 664, 64 Atl. 26, 8 L. R. A. (N. S.) 738, 7 Ann. Cas. 1114, a case in which were joined 17 directors, who had held their offices each for a short period in 12 different directorates, some of whom were charged with having declared illegal dividends, and others were charged with having made improper loans. It appeared that the defendants who were charged with making the improper loans were not directors at the time when the illegal dividends were declared. The court said:

"Are all of the defendants to be thus subjected to inconvenience, loss of time, fees of counsel, and possibly expert accountants, court costs incurred concerning matters in which they are not connected, simply because at some time they happened to be directors of the same bank?"

But the court also said:

"There is no rule on the subject of universal application, and much is left to the discretion of the court, to be determined by the facts of each particular case."

It was in view of the confusion and the difficulty of apportioning costs that the court, in that case, held that the bill was multifarious. This it doubtless had the discretion to do. But we think it clear that in the present case the court below had the discretion to permit, as it did, the joinder of the causes of action, and that in so ruling there was no error.

[2, 3] It is contended that the complaint fails to state a cause of action, in that it omits to plead the statute of the state of Nevada. This objection was not presented to the court below, and it is not suggested in the assignments of error. Nor was any objection made in the court below to the introduction in evidence of the Nevada statute. There are two reasons why the contention cannot be sustained. In the first place, the complaint did not lack necessary averments to constitute a cause of action. It alleged that the dividend was wrongfully and unlawfully and fraudulently declared and paid, with the knowledge, consent, and approval of the defendants, and set forth facts to sustain the allegation, and also alleged facts to show that the money paid out for the surrender of stock certificates was fraudulently and illegally paid out of the capital of the corporation. Those allegations were sufficient to constitute a cause of action at common law. 7 C. J. 562, § 168; Brinckerhoff v. Bostwick, 88 N. Y. 52. Again, it is our opinion that the court below was authorized to take judicial cognizance of the law of Nevada. In Mills v. Green, 159 U. S. 651, 657, 16 Sup. Ct. 132, 134 (40 L. Ed. 293), the rule is thus stated:

"The lower courts of the United States, and this court on appeal from their decisions, take judicial notice of the Constitution and public laws of each state of the Union."

The District Court of the territory of Alaska is, we think, one of the "lower courts of the United States" to which the rule should apply, and, while we find no adjudication to that precise effect, it is significant

that in Cheever v. Wilson, 9 Wall. 108, 19 L. Ed. 604, the court held the rule to be applicable to the courts of the District of Columbia.

· [4] It is contended that the purchase of the corporate stock by the appellants was not in violation of the law of Nevada. Section 68 of the Corporation Act of Nevada (Rev. Laws 1912, § 1169) provides that it shall not be lawful for the trustees or directors—

"to divide or withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the company, nor to reduce the capital stock unless in the manner prescribed in this act, or in accordance with the provisions of the certificate or articles of incorporation, and in case of any violation of this section, the directors or trustees under whose administration the same may have happened * * * shall in their individual and private capacities, be jointly and severally liable to the corporation, and [to] the creditors thereof, to the full amount so divided, withdrawn, or reduced, or paid out."

To pay to the stockholders the par value of their capital stock, as the court below found that the appellants did in exchange for the certificates of stock, is prohibited by the act when the payment is made out of the capital of the corporation and not out of its surplus. While it may not be said that the act prohibits the purchase of the shares of its stock by a corporation, it does prohibit the payment of any part of the capital for that purpose. ·A similar statute of the state of New York was under consideration in In re Castle Braid Co. (D. C.) 145 Fed. 224. The court held that the law did not broadly forbid the purchase by the corporation of its shares of stock held by its directors, and that such purchase was permissible if the transaction was fair and honest, and in the interest of the corporation and not of the selling directors. The court said of the statute:

"By implication it may forbid the purchase of any property of any description from the stockholders, and the payment therefor from the capital of the corporation; that is, from any funds except the surplus."

So in In re Tichenor-Grand Co. (D. C.) 203 Fed. 720, it was held that the New York statute, which prohibits a corporation from purchasing its own stock except out of the surplus, renders invalid a contract by a corporation with a subscriber to its stock, where the stock is issued and paid for, to repurchase the same after a stated time on notice of the subscriber's election. Other cases in point are Coleman v. Tepel, 230 Fed. 63, 144 C. C. A. 361; Hamor v. Taylor-Rice Engineering Co. (C. C.) 84 Fed. 392; Md. Trust Co. v. Mechanics Bank, 102 Md. ·608, 63 Atl. 70; Tait v. Pigott, 32 Wash. 344, 73 Pac. 364; Tait v. Pigott, 38 Wash. 59, 80 Pac. 172; Martin v. Zellerbach, 38 Cal. 309, 99 Am. Dec. 365.

[5] The contention that the purchase of the stock was without the knowledge and against the instructions of the directors cannot be sustained. There was conflict in the testimony, and the court below found the facts against the appellants. The court in so finding was largely influenced by the fact that at each monthly meeting of the directors a statement of the financial condition of the corporation was presented and considered, and the fact that the records show that the directors expressly authorized in some instances the purchases of the stock, and that in other instances they approved purchases that had been made.

The whole tendency of the testimony is to show that the directors had knowledge of all the stock transactions.

[6] The appellants contend that the appellee cannot recover in this suit funds to pay creditors who were not such at the time when the dividend was declared and the stock was purchased, and cite cases such as Atlanta & Walworth B. & C. Ass'n v. Smith, 141 Wis. 377, 123 N. W. 106, 32 L. R. A. (N. S.) 137, 135 Am. St. Rep. 42. In that case it was held that the trust fund doctrine, that under all circumstances assets of a corporation constitute a trust fund for creditors, does not prevail in Wisconsin, and that as a general rule, unless plainly prohibited by statute, or its organic act, a corporation may buy its own stock, using its assets therefor, so long as it acts in good faith, pursuant to authorization of its governing body, and that this is true both as to past and future creditors. But in the case at bar the acts of the directors, as we have seen, were prohibted by statute, and were not performed in good faith. In Cook on Corporations (6th Ed.) § 548, it is said:

"Hence the rule has been firmly established that, where dividends are paid in whole or in part out of the capital stock, corporate creditors, being such when the dividend was declared, or becoming such at any subsequent time, may, to the extent of their claims, if such claims are not otherwise paid, compel the stockholders to whom the dividend has been paid to refund whatever portion of the dividend was taken out of the capital stock."

In Coleman v. Tepel, 230 Fed. 63, 144 C. C. A. 361, it was held that where a corporation was rendered insolvent by purchasing its own stock, and giving a mortgage for the indebtedness thereby created, the transaction was void as to subsequent, as well as to prior, creditors, although there was no fraudulent intent. The court said:

"It has been urged that, if the transaction is void, it is void only as to existing creditors, and not as to those with whom the corporation subsequently incurred obligations, upon the ground that, to avoid a transfer of property in fraud of future creditors, there must be present actual intent to defraud. * * * We are inclined to hold, upon the reasoning of well-considered authorities, that the void character of such a transaction as to future creditors does not depend upon fraudulent intent, and that when a stockholder, with the knowledge he has, or with that with which he is charged, concerning the financial condition of the corporation, engages in a transaction which results in a depletion for his advantage of corporate assets below the subscribed capital, or below existing liabilities, as the law may be, and becomes a party to the solvent appearance of a business that is intended to be continued, he is bound by his act, both to existing and future creditors, when its direct object or immediate consequence is the insolvency of the corporation and injury to creditors."

In Coleman v. Booth, 268 Mo. 64, 186 S. W. 1021, the Supreme Court of Missouri held that the trustee in bankruptcy of a corporation may recover the amount received by a director through transactions with the corporation which resulted in wrongful depletion of its capital stock, even though all claims of creditors occurred subsequent to such transaction. Said the court:

"It makes no difference, in respect to this matter, whether the debts represented by the trustee were contracted before or after the illegal acts complained of."

To the same effect is North v. Union Savings & Loan Ass'n, 59 Or. 483, 117 Pac. 822; and in Atlanta & Walworth B. & C. Ass'n v. Smith, so cited by appellants, the court said:

"We are not unmindful that the rule, in general, as to avoidance of a transfer of property in fraud of future creditors, applies only in case of actual intent to defraud them. * * * It is too restrictive, as generally stated, to apply to the situation we have here, and should, it is thought, be extended to include it, upon the theory that the duty of the stockholder not to deplete for his advantage corporate assets below the subscribed capital, and become a party to a continuance of solvent appearance, supplies the need for actual intent to defraud, where the natural and probable effect is to prejudice persons subsequently dealing with the corporation as solvent."

These decisions suggest the reason why recovery on behalf of subsequent creditors is permissible—the reason which is pointed out by Lord Watson in Trevor v. Whitworth, 12 App. Cas. 409, that persons dealing with a corporation—

"are entitled to assume that no part of the capital which has been paid into the coffers of the company has been subsequently paid out, except in the legitimate course of its business."

[7] One of the defenses pleaded by the appellants was accord and satisfaction, arising out of the following facts: On March 13, 1911, E. T. Barnette, who had been the president of the corporation, presented to the court below a petition, referring to the condition of the bank, the receivership, and the petitioner's desire to pay the money due and owing to depositors, and offering as security for that purpose the conveyance of certain real estate to the receivers. On March 20, 1911, the receivers applied to the court for instructions, expressing their opinion that, if the deeds were accepted, it would be impracticable to proceed as contemplated to fix liability against Barnette in favor of the creditors of the bank. On March 29, 1911, the judge of the court below made an order to the effect that the receivers accept the property on the conditions expressed in Barnette's petition. One of those conditions was that, after the payment of the balance of the claims and demands of the depositors and owners of unpaid drafts, the remainder of the property, if any, be returned to the petitioner. The amount realized from the rents and sale of said property up to May 1, 1914, was $30,905.65.

The contention of the appellants is that the acceptance of the property by the receivers was satisfaction and extinguishment of all liability of Barnette, and that thereby all persons jointly liable with him were released, or at least that the acceptance of the property by the receivers was a covenant not to sue Barnette, and that it operated to extinguish the causes of action against the appellants, and constituted a compromise of a tort. To this it is to be said that there is nothing in the record to show that Barnette stipulated for release from liability for his own acts, or for the acts of his associates, in the management of the bank. He stipulated in one of his deeds that the receivers were not to take possession of the property conveyed, nor the rents, issues, and profits thereof, nor have any right to the possession or use thereof, at any time prior to November 18, 1914. In the other deed it was provided that the grantees might at any time in their discretion sell the

property therein described and apply the proceeds to the payment of depositors and the owners of unpaid drafts, and there was coupled with it the further provision that the grantees might so sell and dispose of the proceeds if on November 18, 1914, the demands of depositors and owners of unpaid drafts had not been fully paid and satisfied. By the terms of both deeds all creditors were excluded from the benefit thereof save depositors and owners of unpaid drafts. The receivers considered that their acceptance of the conveyances obligated them not to sue Barnette before November 18, 1914, and the appellee so pleaded their effect in the reply.

Again, the property was not all surrendered absolutely for the payment of the depositors and holders of unpaid drafts, but a portion thereof was surrendered only for the payment of a deficit to be thereafter ascertained as between the amounts due depositors and owners of unpaid drafts and the amount realized by the receivers out of the property and assets of the bank. None of the proceeds of the property so surrendered by Barnette in the first deed can be applied to payment of depositors and holders of unpaid drafts until all the property and assets of the bank shall have been realized on and devoted to liquidation. There was imposed upon the receivers, by their acceptance of the conveyances, the obligation to pursue all available remedies to recover the assets, including, we think, the assets which may be recovered in the present suit. While it is true that the deeds to the receivers recited that the receivers are about to commence an action on behalf of creditors against Barnette to recover from him the amount of any deficit that may be ascertained between the claims of creditors and the amount realized out of the property and assets of the bank, said action to be based on the liability of Barnette to said creditors "arising out of his management of the affairs thereof," there is nothing in the evidence to show that the deeds were accepted in accord and satisfaction of the claims of the corporation against Barnette or any of the appellants. The court below was of this opinion, and said that the transfer—

"did not operate to release any of the defendants, and was not accepted by the receiver in satisfaction of the claims of the corporation or its creditors against any of the defendants, but such transaction was in effect an agreement not to sue Barnette prior to the expiration of the trust agreement, and instead of preventing the receiver from proceeding against these defendants, it rather rendered it necessary for him to take all proper steps to recover whatever possible upon the liabilities of any other person to the corporation or its creditors."

[8] "Accord and satisfaction requires an agreement, an aggregatio mentium, and it must finally and definitely close the matter covered by it. Nothing of or pertaining to that matter must be left unsettled, or open to further question or arrangement." 1 C. J. 527, § 12. "To constitute an accord and satisfaction, it is necessary that the money should be offered in full satisfaction of the demand, and be accompanied by such acts and declarations as amount to a condition that the money, if accepted, is accepted in satisfaction; and it must be such that the party to whom it is offered is bound to understand therefrom that if he takes it he takes it subject to such conditions." 1 Cyc. 332.

We find no error. The decree is affirmed.