NOYES v. WOOD et al.*

(Circuit Court of Appeals, Ninth Circuit. November 19, 1917.)

No. 2593.

1. BANKS AND BANKING ⬸91—REPAYMENT OF LOANS—ACCEPTANCE OF BANK'S STOCK.

A bank, although without power to purchase its own stock, may lawfully accept such stock in repayment of a loan which the directors deem precarious.

2. BANKS AND BANKING ⬸54(2)—ILLEGAL PURCHASE OF STOCK—LIABILITY OF DIRECTORS.

Evidence *held* insufficient to establish the good faith of the directors of a bank and exonerate them from personal liability for misappropriating the bank's funds, where, although it was without power under its charter to purchase its own stock, its funds were in fact used, although indirectly, to pay for the stock of a stockholder.

3. BANKS AND BANKING ⬸54(2)—MISAPPROPRIATION OF FUNDS—PURCHASE OF STOCK FROM CAPITAL.

A writing by which a member of a partnership, whose business was taken over by a newly organized bank, agreed to take stock in the bank for his share of the firm's assets, *held* to bind him as a stockholder, and a transaction by which he was paid cash in lieu of the stock, after he had served as cashier of the bank and knew that he was carried on the

books as a stockholder, *held* an illegal diversion of the funds of the bank, which a subsequent receiver was entitled to have set aside.

4. BANKS AND BANKING ☞77(4)—LIABILITY OF DIRECTORS—ADVERSE INTER-EST IN TRANSACTION.

The receiver of an insolvent bank *held* entitled to recover from the directors damages sustained by the bank by reason of the purchase from a partnership, of which two of the directors were members. at face value, of assets which proved to be worthless, and which were known by the directors at the time to be of doubtful value.

5. BANKS AND BANKING ☞54(2)—LIABILITY OF DIRECTORS—MISAPPROPRIA-TION OF FUNDS.

The payment by a bank of accrued interest on notes purchased from a partnership, not provided for by the written contract between the parties, *held* an illegal diversion of the funds of the bank, for which the directors participating were liable.

6. BANKS AND BANKING ☞54(2)—LIABILITY OF DIRECTORS—MISAPPROPRIA-TION OF FUNDS.

A bank bought stock of another bank, and at the same time gave an option to another to purchase the stock within a year at the same price. At the end of the year the option was exercised by the holder and another, both of whom were then directors, and with the concurrence of the other directors the stock was transferred to them without the payment of any interest to the bank, which in the meantime had received no dividends on the stock. *Held*, that all the directors participating were liable to the receiver of the bank for legal interest on the investment so carried by it for the sole benefit of the purchasing directors.

Appeal from the District Court of the United States for the Fourth Division of the Territory of Alaska; F. E. Fuller, Judge.

Suit in equity by F. G. Noyes, as receiver of the Washington-Alaska Bank, against R. C. Wood, John L. McGinn, Roy Brumbaugh, J. A. Jesson, James W. Hill, E. R. Peoples, J. A. Healey, John A. Clark, and George Preston. Heard on cross-appeal by the receiver. Decree modified.

For prior opinion on defendants' appeal, see 245 Fed. 46, —— C. C. A. ——.

Fernand De Journel, of San Francisco, Cal., and O. L. Rider, of Vinita, Okl., for appellant.

John L. McGinn and A. R. Heilig, both of Fairbanks, Alaska (Metson, Drew & Mackenzie, Curtis Hillyer, Chas. J. Heggerty, and E. H. Ryan, all of San Francisco, Cal., of counsel), for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. This is a cross-appeal; the original appeal being No. 2528, Jesson et al. v. Noyes, as Receiver of the Washington-Alaska Bank, reported in 245 Fed. 46, —— C. C. A. ——, to which reference may be had for the general nature of the suit. By this appeal the receiver asks review of certain findings and conclusions made by the lower court in respect to the purchase of certain shares of bank stock, referred to as the Strandberg, Johnson, and McGinn stock, respectively, and also challenges the accuracy of certain conclusions of law and of the decree made upon the facts as found.

The substance of the finding of the court with relation to the purchases of the stock referred to is as follows:

The board of directors of the bank required monthly statements showing the condition of the bank, and on July 13, 1908, considered refunding to those who wished to give up their stock, and thereafter numerous surrenders were made by stockholders. Stock taken back by the bank was charged to treasury stock. On November 18, 1908, the stock of Strandberg Bros., 100 shares, Emma Strandberg, 10 shares, and Johnson, 10 shares, of an aggregate par value of $12,000, was taken up by the bank in part payment of a loan of $15,000 that the bank had previously made to the firm of Strandberg & Johnson. The bank was also paid at that time $4,000 in cash on account of the loan. The court regarded this transaction as the taking of stock for a pre-existing debt rather than as a purchase of stock by the directors, and held that when the transaction was had the directors acted in good faith and in the belief that the loan to Strandberg was precarious.

McGinn owned 100 shares of stock, of the par value of $10,000, and on October 13, 1910, demanded the right to inspect the books of the bank, and threatened that, unless he was given such right immediately, he would apply for an order permitting the examination and for the appointment of a receiver. The court found that the directors, fearing that the information obtained by an investigation would be used by McGinn in promoting the interests of a rival bank, and that if litigation were started it would impair confidence, authorized the cashier to lend a purchaser enough money to pay for McGinn's stock; that one of the directors said that he had a purchaser who would buy the stock for $6,000, but that the money would have to be borrowed; that, the matter being urgent, the cashier bought the stock in his own name, and gave his note to the bank for the purchase price thereof, and paid to McGinn $6,000, the proceeds of the note, for 100 shares of stock; that thereafter, about October 25, 1910, the cashier, without the knowledge of the directors, canceled the note, charging the amount thereof to the bank, and surrendered it to the bank; and that thereafter the bank held the stock as treasury stock.

The court found generally that, when stock was taken back by the bank, the amount paid was either turned over in cash or notes held by the bank or canceled and surrendered by the stockholders, that there was no surplus or undivided profit against which the account could be charged, and that the directors acquiesced in the stock surrenders, and in some instances expressly approved the same. The court exonerated Jesson, Hill, and Peoples of all liability connected with the purchase of the Strandberg and Johnson stock, and dismissed the appellant's action with relation thereto, and also appellant's action for recovery against the appellees Jesson, Brumbaugh, Clark, Healey, and Preston, directors at the time of the purchase of the McGinn stock.

The evidence upon which the findings rest shows that on November 5, 1908, the executive committee of the bank agreed to lend Strandberg Bros. $15,000 on the security of 110 shares in the Fairbanks Banking Company and notes aggregating $2,500. The directors approved this resolve on November 12, 1908. Strandberg and Strandberg Bros. and Johnson made a note to the bank for $17,050, dated November 5, 1908, due May 31, 1909, and $15,000 as the proceeds of

the note were credited to Strandberg Bros. and Johnson, and the stock placed as collateral. It does not appear definitely what day the note was executed, but it would seem to have been about November 12th, or about six days before the executive committee discussed the matter of taking over the Strandberg stock, with a view of applying the pro-. ceeds to take up the loan of Strandberg Bros. On November 19th the stock was taken up, $4,000 was paid, and the note canceled and surrendered, and the stock was charged to the treasury stock account, and the deposit account of Strandberg Bros. and Johnson was credited with $15,000, which the court finds "subsequently was withdrawn by them." Afterwards, November 25th, the deposit account of Emma Strandberg was credited with $1,000, par value of her stock, and her 10 shares were canceled, charged to treasury stock, and the amount so credited to her account was by her subsequently withdrawn.

The history of the surrender of the McGinn stock is as follows:

Prior to October 12, 1910, McGinn, who had been a director of the Washington-Alaska Bank, formerly the Fairbanks Banking Company, and an attorney for the bank, notified the vice president and manager that he intended to examine the affairs of the bank and would sell his stock for $6,000. The court found that McGinn, who was at that time an owner in the First National Bank, a rival of the Washington-Alaska Bank, threatened the officers of the Washington-Alaska Bank by telling them that an examination would disclose matters which would be of advantage to the First National Bank and harmful to the Washington-Alaska Bank, and that this threat alarmed the directors of the Washington-Alaska Bank, and that thereupon the transaction referred to was entered upon. The court finds that these matters were told to the directors and at a meeting of October 12, 1910, the directors authorized a loan "to the party to whom McGinn would sell and retain the stock in the bank as collateral," and that, if necessary to prevent action by McGinn, the cashier, Hawkins, should be loaned the money to pay for the McGinn stock, and the stock should be held as collateral for the loan; that when the prospective purchaser could be communicated with a new loan could be made to him and the stock issued to such purchaser and be held by the bank as collateral security for such new loan. The cashier borrowed $6,000, bought the stock, made his note to the bank, and thereafter canceled his note and returned the stock to the bank without any knowledge on the part of any of the directors until after the bank was closed. It is found that the directors acted in good faith in this matter and believed, when they bought the stock, that it was worth more than $6,000, and that if McGinn had been permitted the right claimed by him as a stockholder, and examination of the bank had followed, irreparable damage would have ensued.

The Strandberg stock transaction is not clear to us, and the briefs of counsel on the respective sides tell us that the evidence of the bookkeeping of the matter is indefinite. If the lower court was right in finding that the deposit of $15,000 to the credit of Strandberg Bros. and Johnson was subsequently withdrawn by them, it would seem that they received that sum from the funds of the bank and also their can-

celed note for $15,000, without consideration other than the stock which they turned over of the value of $11,000 and $4,000, which they paid in cash, the question then occurs: Why, if, as appellee contends, the object of the purchase by the bank was to cancel the debt due by Strandberg Bros. and Johnson, was the $15,000 put to their credit, and why were they allowed to draw it out? If the stock was charged, as it was apparently, to treasury stock, the cash ought to have been charged to cash. The cancellation of the note would require that the loan account should be balanced by a credit thereto; but, again, if the stock sale and the cash took up the loan, yet the $15,000 was withdrawn, it is hard to see what benefit accrued to the bank. Appellee argues that the statement just referred to which appears in the record is evidently a mistake, and argues that when the amount of $15,000 was credited to the Strandberg account the deposit account must have been charged with the amount in payment of the outstanding note, and that on the surrender of the stock the bills receivable account must have been credited with $11,000 and the treasury stock account charged with $11,000, and the bills receivable account credited with $4,000 cash and the cash account charged with $4,000.

[1] If the position of appellant is correct, the transaction discloses glaring wrongdoing, while if appellees' solution is right the court was justified in concluding that the directors acted in good faith and in the belief that it was a proper way to protect the bank as against what they looked upon as a precarious loan. But in the absence of definite evidence to demonstrate clearly that the appellant's inferences are sound, we must hold that the proof fails to overthrow the conclusion of fact which accords with the presumption of integrity, and not chicanery, on the part of those in charge of the affairs of the bank. Good faith and honesty being therefore presumed, the transaction became one where the bank received its own stock in payment of a secured debt owing to it, the directors believing the taking to be reasonably necessary to prevent loss. To this we believe there was no legal objection, notwithstanding the fact that the corporation had no power to purchase its own shares. 7 R. C. L. 533; Barto v. Nix, 15 Wash. 563, 46 Pac. 1033.

[2] But we find ourselves unable to sustain the view of the District Court upholding the validity of the McGinn stock transaction. It would seem that the statement of the director to his codirector that he had in mind a prospective purchaser for the stock, whose name was not disclosed, and who would have to make a loan at the bank in order to enable him to purchase the stock, should have aroused enough interest to call for the name of the person who would buy. But, however that may be, the cashier was authorized to borrow enough of the bank's funds to pay for the stock and to hold the same as collateral until the prospective purchaser could be reached. It may be that the transaction finds sufficient explanation in the apprehension then felt that, unless action of the character had was taken, ruin would face the bank. But that does not dispose of the unexplained omission of the directors after the stock was acquired to inquire whether the trans-

action ever was carried out by a sale through the cashier and the bank relieved of the consequences of having purchased its own stock in the market. We decline to say that directors of a bank, who had been purchasing stock from time to time, can put their corporation in such a position, and after refraining from making any inquiry of the cashier, whom they had elected to hold the stock, as to whether he had carried out their directions, and delivered the stock to the expected buyer and canceled the loan made to himself, can escape liability for their negligence, upon the ground that no information was given to them that the cashier had not transferred the stock to, and taken the note of, the undisclosed unknown purchaser. As we look at the transaction, the only consideration moving to McGinn was the money of the bank, and when the cashier turned the stock over to the bank and canceled his own note he was but completing the transaction authorized by the directors and for which they must be held liable. Jesson et al. v. Noyes, 245 Fed. 46, —— C. C. A. ——; In re S. P. Smith Lumber Co. (D. C.) 132 Fed. 618; Devlin v. Moore (Or.) 130 Pac. 46; Thompson v. Reno Savings Bank, 19 Nev. 103, 7 Pac. 68, 3 Am. St. Rep. 797; Tolman v. N. M. & D. Mica Co., 4 Dak. 4, 22 N. W. 505.

[3] The next question involves the purchase of stock from appellee Wood. The substance of the pertinent findings is as follows: Before January 21, 1908, subscriptions for capital stock in the Washington-Alaska Bank were circulated. E. T. Barnette, who was then a partner, subscribed for 220 shares for Wood. At a meeting of the stockholders of the Fairbanks Banking Company in March, 1908, the matter of taking over the property of the Fairbanks Company, a partnership, was discussed, and on March 12th, at a meeting of the subscribers to the capital stock, Wood and others were treated as stockholders. Wood was not present, but was notified of the result of the meeting. On March 16, 1908, an agreement was made by the corporation and the partnership fixing values of resources to be turned over to, and amounts of liabilities to be assumed by, the corporation, and the shares to be issued to Wood. In the agreement, Wood, Barnette, and Hill agreed to accept the stock of the corporation at its par value for the amount of assets in excess of said liabilities. Wood, though not present, was advised of these matters, and before he returned to Fairbanks offered to sell his corporation stock and take in payment therefor part cash and a note to be secured by the stock as collateral. Wood returned to Fairbanks in April, 1908, and signed the agreement heretofore referred to, whereby he agreed to take stock for his share of the assets of the partnership transferred to the corporation in excess of the liabilities thereof. Wood was elected cashier of the corporation, and acted as cashier from March 16 until June 30, 1908. He then demanded $13,000 as the amount of his interest in the partnership assets, and a certificate for 130 shares of the capital stock of the bank, of the par value of $13,000, was written up in the name of Wood, but was never detached from the stockbook, and was carried as outstanding stock from March 16 to June 30, 1908. On June 30th Wood accepted a certificate of deposit for $13,000 in lieu of the stock, and on

that day the shares of capital stock standing in Wood's name were charged to treasury stock on the books of the bank, and Wood afterwards drew out in cash from the funds of the bank the $13,000.

Upon these facts the court held that the appellees Jesson, Hill, and Wood were not liable to the receiver for the purchase of the $13,000 of stock. In summing up the testimony upon which the court made the findings stated above, the judge emphasized the testimony of Wood to the effect that it was distinctly understood between him and the directors, at the time he signed the agreement with the corporation, that he should have the right to take cash, instead of the par value of the shares subscribed for, on July 1st, and the court was of opinion that, whatever the liability of Wood may have been under the written agreement of March 16th, the agreement having been fully executed in accordance with what was then the understanding of all the parties thereto, and cash in lieu of stock having been delivered to Wood, the receiver could not set aside the executed contract and enforce the terms of the written contract, although the written contract is found to be at variance in some respects with that exactly carried out by the parties. But we find that such a conclusion does not properly follow from the facts. In our opinion, Wood was a subscriber for the capital stock of the bank; he elected to take stock for his share of partnership assets, and acted as a stockholder, well knowing that stock was issued to him and carried on the books of the bank as outstanding shares. The directors also knew of these things, and the transaction of taking back the stock was separate from the transfer under the written contract, and was a division of the capital of the bank among the stockholders on a payment therefor out of the money of the depositors of the bank.

[4] Appellant also asks judgment against the appellees Jesson, Hill, and Wood jointly and severally for the purchase from the partnership of $69,909.94 of past-due and worthless notes, and particularly specifies certain notes by the Tanana Electric Company, aggregating $27,997.38, and also certain notes, aggregating $12,860.61, which the partnership had carried as "doubtful accounts." In the written agreement entered into between the partnership and the corporation at the time of the transfer, the bank assumed the liabilities of the partnership, including an obligation of $252,000 to the partners individually, in consideration of the transfer to the bank of the partnership assets. Part of these assets were specified loans and discounts, together with notes past due and accepted at face value, but which were found by the court to be "unpaid and uncollectible." Hill and Wood, appellees, together with Barnette, composed the partnership, and when the bank was organized Barnette became president, Hill vice president, and Wood cashier, and these three were officers when the written agreement of transfer was made, and Jesson was a member of the board of directors. The court found that two past-due notes, made by the Tanana Electric Company in the sum of $27,997.38, depended for their value upon the existence of an alleged guaranty of the Scandinavian-American Bank to make advancements sufficient to cover the same, but that in fact there was no guaranty, and the claim therefor had been repudiated by

the Scandinavian-American Bank before the note was accepted by the board of directors of the bank, and that the "repudiation" was known to the members of the board of directors. It was found that, of the notes accepted from the partnership and paid for by the corporation, there were charged by the partnership on its books on December 31, 1907, "doubtful accounts" for $22,979.99, and that the "doubtful accounts" were then depreciated on the books to the extent of 33⅓ per cent. thereof, and the notes were accepted by the corporation at $22,979.99, but that of this sum $12,869.61 was unpaid and uncollectible, and that when these past-due notes were accepted and paid for, including the notes of the Tanana Electric Company, certain of the directors, including Hill, Jesson, and Wood, cashier, gave their consent with full knowledge of all the facts, and that Hill and Wood were also members of the partnership with which the corporation contracted respecting the matters, and were personally interested adversely to the corporation.

Upon these facts Jesson, Hill, and Wood were held not liable to the receiver for the purchase of these notes, because the contract for taking over had been fully executed, and also because under the statutes of Nevada the corporation was authorized to issue stock for labor done, or personal property, or real estate, and in the absence of fraud in the transaction the judgment of the directors as to the value of such labor, property, and real estate necessarily should be conclusive. But in our judgment the question which called for decision was whether the receiver of the bank could recover damages which the bank had sustained on account of the negligence and mismanagement of its officers and agents. And upon the real point involved the law is established that, wherever there is a personal interest in a director which is adverse to that of the bank, the situation calls for the utmost fairness and good faith in guarding the interest of the bank. Stearns v. Lawrence, 83 Fed. 738, 28 C. C. A. 66; Coddington v. Canaday, 157 Ind. 243, 61 N. E. 567. In the light of the findings of fact of knowledge, we can find no sound principle upon which the conclusion of the court can be upheld.

[5] Appellant asks judgment against the appellees Jesson, Hill, and Wood for $39,642.81, paid to the partnership as accrued interest on notes purchased from it by the corporation, Fairbanks Banking Company. This transaction appears to have been as follows: Under a written agreement between the partnership and the bank there was transferred to the corporation loans and discounts aggregating $353,-842.54. In the loans and discounts is a list of notes with a schedule attached to the contract referred to. In the agreement the partners, as parties of the first part, assigned these scheduled outstanding loans and discounts, together with mortgages to secure the same, and agreed to transfer all to the corporation. The partnership failed in December, 1907, and trustees for it were appointed. In January, 1908, certain proposed incorporators had a meeting with a view to organizing a corporation to take over the business of the partnership, and in due time a plan was adopted by the proposed organizers. The scheme recommended by the committee was the acceptance of the partnership prop-

erty on a basis of $288,000 in excess of its liabilities, and that all interest on existing loans as of December 19, 1907, be computed to February 15, 1908, and the amount of such accrued interest be placed to the credit of the old institution on the books of the new corporation, to be payable before December 31, 1908. This was agreed to, and afterwards, on January 21, 1908, the Fairbanks Banking Company, a corporation, was organized, and on February 8th thereafter the subscribers to the capital stock met and elected a board of directors, to serve until the articles of incorporation could be received from Nevada. After the articles had come, in March, 1908, the board resolved that the taking over of the property of the partnership, Fairbanks Banking Company, be left to the board of directors. On March 12th the board· adopted certain resolutions, except that the resolutions providing for the payment of accrued interest up to February 15, 1908, was amended so as to read "March 15, 1908." On March 16th the written agreement referring to the liabilities was entered into, in which the value of the assets of the partnership in excess of its liabilities was reduced from $288,000 to $252,000, but no provision was made therein for the payment of accrued interest. Afterwards papers were prepared and agreements signed by Barnette and Hill, two members of the partnership, and by the corporation, through its president and secretary. In April, 1908, Wood, the remaining partner, signed the agreement, "knowing that it did not provide for the payment of said accrued interest." On March 23, 1908, accrued interest was computed to March 15th of that year, amounting to $39,642.81, which was placed to the credit of the partners and subsequently paid to them in cash. At this time Hill, appellee, was vice president of the corporation and a member of the executive committee, Wood was cashier, and Jesson was a member of the board of directors. The court also finds that all consented to what was done, and that Hill and Wood, as members of the partnership, were personally interested adversely to the corporation. Upon substantially these facts the court held that Jesson, Hill, and Wood were not liable to appellant for the allowance of the accrued interest, and dismissed appellant's action therefor.

We believe the payment to the partners of the $39,642.81 as accrued interest was wholly without right as against the rights of those represented by the receiver. In the proposed reorganization interest was to be computed on existing loans to February 15, 1908, as was the proposal for acceptance of notes and properties at a value of $288,000 in excess of liabilities; but when incorporation was had the shareholders turned the matter of taking over the property of the partnership to the board of directors, and the board approved the resolution of the stockholders with the change that accrued interest should be paid up to March 15, 1908. Thereafter, when the written agreement was prepared by the executive committee, no reference was made therein to allowance of any accrued interest, but the excess of assets over liabilities was reduced from $288,000 to $252,000. The written agreement of March 16, 1908, between the partnership and the corporation, expressly transferred all loans and discounts as appearing in the schedule to the corporation, and contained this language:

"The intention of this agreement being to place the party of the second part in the shoes of the parties of the first part * * * as to all properties hereinbefore mentioned and specified."

By the sale of the notes all right to accruing and accrued interest passed to the corporation, and the action of the directors in paying the item of interest was against the written agreement with the partnership and in effect became a diversion not to be countenanced. Briggs v. Spaulding, 141 U. S. 132, 11 Sup. Ct. 924, 35 L. Ed. 662; Michie on Banks and Banking, 296, 297. It appears that $7,500, included as paid for accrued interest was never collected by the bank from borrowers. This payment constituted a deliberate depletion of the funds of the bank.

[6] Appellant asks for a reversal of the action of the lower court in denying him a recovery against appellees Jesson, Wood, McGinn, and Brumbaugh jointly and severally for one year's interest upon the amount of funds of the bank which were invested in the capital stock of the First National Bank. The substance of the findings in the matter was as follows:

In May, 1909, the Fairbanks Banking Company and the Washington-Alaska Bank of Washington each bought one-half of the capital stock of the First National Bank of Fairbanks, Alaska, for which each paid $62,500. The stock was owned until May 4, 1910, when the Fairbanks Banking Company sold and delivered all such stock to the appellees herein, Wood and McGinn, for $125,000. When the banks bought the stock, they gave to Wood an option to purchase the same on or before June 1, 1910, for $125,000, and the sale to Wood and McGinn was made in pursuance of such option. Neither of the banks received any dividend on the stock while it was owned and held by them; nor did Wood and McGinn pay any interest upon the money invested in the stock. When the sale to McGinn was made, the appellees, Jesson, Wood, McGinn, and Brumbaugh, were officers and directors of the Fairbanks Banking Company, and each agreed to the sale on the terms above stated. The Fairbanks Banking Company was the successor of the partnership of Barnette, Hill and Wood, which had done business under the partnership name of Fairbanks Banking Company. On September 14, 1909, the Fairbanks Banking Company, a corporation, bought the entire capital stock of the Washington-Alaska Bank of Washington, and thereafter, on October 1, 1910, the Fairbanks Banking Company took over the assets of the Washington-Alaska Bank and agreed to pay its liabilities, and thereupon the Washington-Alaska Bank ceased to do business and the Fairbanks Banking Company changed its name to the Washington-Alaska Bank of Nevada, now in the hands of the receiver, who is the appellant herein.

It appears, then, that the Fairbanks Banking Company invested in the stock of the First National Bank out of its own funds $62,500, and thereafter invested $250,000 in buying the entire capital stock of its co-owners, the Washington-Alaska Bank of Washington. Naturally, the Fairbanks Banking Company should have received some interest on its investment by way of profits of the First National

Bank during the year of such investment; and it would also seem that, as the sole stockholder of its co-owner, the Washington-Alaska Bank of Washington, it should also have received some dividend upon the $62,500 invested by that bank. But no profit appears to have come from the investment unless it should be held that, when the Fairbanks Banking Company took over the Washington-Alaska Bank, it acquired as a part of the assets of the last-named bank a right to interest on the $62,500, which had been invested by the Washington-Alaska Bank of Washington in the stock. It is admitted that the purchase of the stock and the option were not the acts of the same officers who later on concluded the sale of the shares to Wood and McGinn, but it is found that Wood and McGinn, defendants here, as officers, ratified the entire transaction when they agreed, as they did, that the sale should be made in pursuance of the option. The option gave to Wood the right at any time within a year to take up the stock at the same price paid for it by the bank. Inasmuch as the bank carried the investment until just before the option expired, without having received a dividend on the stock or any interest on the investment, the most reasonable inference is that the bank in its purchase acted for the benefit of those who had the right to avail themselves of the option, and that the defendants, appellees, Jesson, Wood, McGinn, and Brumbaugh, by consent to the sale on the terms specified in the option, ratified the action of the bank in carrying the investment for the benefit of the optionees without cost to them. Thus the transaction became one where the directors and officers of the bank knowingly failed to guard the interests of the corporation and preferred to serve the personal interests of certain directors. The legal consequences must be that all directly involved became liable for the loss of interest on the money invested at the legal rate prevailing in Alaska. Wardell v. Railroad Co., 103 U. S. 651, 26 L. Ed. 509; Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667.

The decree of the lower court is ordered corrected in the particulars hereinafter referred to, to conform with the views which we have expressed, so that, in addition to the relief therein granted to the receiver, he may have a decree in his favor: (1) Against the appellees John A. Jesson, John A. Clark, and J. A. Healey, jointly and severally, on the purchase of the stock of John L. McGinn, with interest from October 13, 1910, $6,000. (2) Against appellees John A. Jesson, James W. Hill, and R. C. Wood, jointly and severally, on the purchase of the stock of R. C. Wood, with interest from June 30, 1908, $13,000. (3) Against the appellees John A. Jesson, James W. Hill, and R. C. Wood, jointly and severally, for the purchase of the worthless Tanana Electric Company notes from Fairbanks Banking Company, a partnership, with interest thereon from March 16, 1908, $27,997.38. (4) Against the appellees John A. Jesson, James W. Hill, and R. C. Wood, jointly and severally, for the purchase of other worthless notes from the Fairbanks Banking Company, a partnership, with interest thereon from March 16, 1908, $41.911.56. (5) Against appellees John A. Jesson, James W. Hill, and R. C. Wood, jointly and severally, for paying to Fairbanks Banking Company, a partnership, accrued interest on notes purchased from

it, with interest thereon from March 16, 1908, $39,642.81. (6) Against appellees John A. Jesson, R. C. Wood, John L. McGinn, and Ray Brumbaugh, jointly and severally, for one year's interest upon the amount invested in the capital stock of the First National Bank, on account of the sale of said stock to John L. McGinn and R. C. Wood, with interest thereon from May 4, 1910, $10,000.